# ALLEMANIA FIRE INSURANCE COMPANY

*v.*

## WILLYS G. PECK *et al.*

*Filed at Ottawa May 14, 1890.*

1. INSURANCE—*delay in bringing suit—excuse therefor.* If the delay of a person insured, to bring a suit on the policy within the time therein limited, is the result of the action of the insurance company inducing him to believe that the loss will be paid or adjusted, the company, when sued, will be estopped from setting up the limitation.

2. In an action on an insurance policy, the defendant pleaded in bar the failure of the plaintiff to sue within six months,—the time limited in the policy. The plaintiff replied that the defendant held out reasonable hopes for an adjustment, and thereby deterred the plaintiff from commencing his suit, and that the plaintiff honestly confided in the promises and pretenses of the defendant; also, that plaintiff delayed bringing suit at defendant's request: *Held,* that the replication was good without the last allegation, and that it might be disregarded as surplusage.

3. SAME—*condition requiring notice of sale—construed—sale as between partners or joint owners.* A condition in a policy of insurance requiring notice to be given to the insurance company of any contract to sell the property insured, and declaring that a failure to give such notice shall avoid the policy, must be held to apply only to contracts of sale between the assured and third parties. It can have no application to contracts between the assured themselves, for the sale or transfer of their respective interests, as partners or joint owners, so long as the party selling retains an insurable interest in the property.

4. SAME—*condition against change of possession, construed.* A policy of insurance provided that it should become void by the sale or transfer, "or any change in the title or possession, of the property insured, (except in case of succession by reason of the death of the assured,) whether by legal process or judicial decree, or voluntary transfer or conveyance:" *Held,* that the change of possession referred to is some change during the term of the policy, and not one made before the application for the policy.

5. SAME—*misstatements—omissions—having reference to an application, etc.* Where the conditions in a policy relating to misrepresentations or concealments as to the situation or occupancy of the property, are in a clause which refers to an application, plan, survey or description, and assume to make such paper a part of the policy and a warranty

by the insured, and no such paper is shown, the clause which refers to it, and attempts to prescribe its place and effect as a part of the contract, and to determine the consequences of misstatements or omissions therein, must be regarded as inapplicable to the facts in the case, and therefore nugatory.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. KIRK HAWES, Judge, presiding.

This was a suit in assumpsit, brought by Daniel E. Little, Willys G. Peck and Omar H. Simonds, copartners under the firm name of Little, Peck & Co., against the Allemania Fire Insurance Company of Pittsburg, Pennsylvania, to recover the amount of a loss by fire under a policy of insurance issued by the defendant to the plaintiffs. By said policy, the defendant insured the plaintiffs, under the name of Little, Peck & Co., for the term of one year from June 28, 1884, against loss or damage by fire and lightning, in the sum of $1000, on their steam power saw-mill, situate on leased ground, on Rice's Point, Duluth, Minnesota, said insurance being distributed as follows, viz.: $200 on frame saw-mill building, $700 on machines and machinery therein, and $100 on steam boilers, engines, etc., in their engine house. Said policy contained and was made subject to certain terms and conditions, of which those material here are as follows:

"The assured hereby covenants and agrees, that any application, plan, survey or description referred to in this policy is true, and shall be and form part of this policy, and a warranty by the assured that no fact material to the risk, or relating to its condition, situation or occupancy has been concealed nor misrepresented, and that the interest of the assured therein has been truly stated to this company; it being understood, unless otherwise expressed in this policy, that the interest of the assured is the entire, unconditional, and sole ownership of the property, and that all buildings intended to be insured by this policy stand on ground owned in fee simple by the assured.

"This policy shall become void and of no effect:

"1. By failure or neglect of the assured to comply with its terms, conditions or covenants.

"2. By the sale or transfer, or any change in title or possession of the property insured (except in case of succession by reason of the death of the assured), whether by legal process or judicial decree, or voluntary transfer or conveyance.

"4. By fraud, or attempt at fraud, in the procurement of this policy, or in the proofs of loss, or by false swearing, or any omission to make known every fact material to the risk, or an over-valuation, or any misrepresentation whatever.

"8. By the failure or neglect of the assured to notify this company that a contract has been signed to sell the property so insured, or if the building stands on leased ground, it must be so expressed in writing on this policy.

"It is furthermore hereby expressly provided and mutually agreed, that no suit or action against this company for the recovery of any claim by virtue of this policy shall be sustainable in any court of law or chancery, until after an award shall have been obtained fixing the amount of such claim in the manner herein provided, nor unless such suit or action shall be commenced within six months next after the fire has occurred."

The evidence tends to show that the total value of the property insured was $40,000, and by the terms of said policy, other insurance was permitted sufficient to make the total insurance $35,000. At the time of the loss the plaintiffs had various policies of insurance on said property, sufficient to make the total concurrent insurance about $30,000.

On the 7th day of September, 1883, which was nine and one-half months prior to the date of the policy in question in this suit, Little and Peck of the one part and Simonds of the other part, entered into the following agreement:

"*September 7, 1883.*

"It is agreed between D. E. Little and W. G. Peck of one part and O. H. Simonds of the other part, that said first party

agree to sell their undivided two-thirds interest in the saw-mill property of Little, Peck & Co. on Rice's Point, Duluth, to said Simonds for the sum of $16,667, and also convey all their interests in the leases on which said mill and yard is situated, the premises being described as blocks 2, 10, 14, 3, 9, 15, and the north half of blocks 4, 8 and 16, Rice's Point, Duluth, Minn., and its appurtenances. Said Simonds agrees to purchase said saw-mill at the price above named and agrees to pay $2500 in 3 days, $2500 in 15 days, $5000 in 45 days, and balance within 6 months.

"Above sale is to include all tramways westerly of the railroad tracks, and the saw-mill tracks, 32 in number. Conveyance shall be made January 1, 1884.

DANIEL E. LITTLE,

W. G. PECK,

O. H. SIMONDS."

Prior to the execution of said contract, Little and Simonds had been the managing partners of the firm of Little, Peck & Co., Peck being the proprietor of another saw-mill, and giving his attention mainly if not wholly to the management of that mill. After the execution of the contract, Little and Simonds formed a new copartnership under the firm name of Little & Simonds, and continued in the possession and management of said saw-mill property, down to the time of its destruction by fire. Simonds made payments at various times on said contract, his payments aggregating $7000, and being unable to make further payments, the matter was allowed to rest without any further steps being taken by either party in relation to the contract, either by way of performance on one part or an attempt at enforcement on the other. At the date of the loss the sum of $9667 and interest remained unpaid. No notice of said agreement was given to the insurance company, and said company, so far as the evidence shows, had no notice of its existence until sometime after the fire.

The fire by which said saw-mill was destroyed occurred on the 23d day of August, 1884, and this suit was commenced on the 24th day of February, 1885. The defendant pleaded non assumpsit, and also a special plea setting up the limitation clause in the policy and the failure of the plaintiffs to commence their suit within the period thus limited. To the last mentioned plea the plaintiffs replied, in substance, that from the time said fire occurred, up to and including the day on which the suit was commenced, the plaintiffs and defendant were carrying on negotiations for a settlement and adjustment of the plaintiffs' claim against the defendant, and that the defendant was then and there holding out reasonable hopes of an adjustment, and thereby deterred the plaintiffs from commencing their suit, and that they honestly confided in said promises and pretenses made by the defendant, and at the request of the defendant delayed bringing suit, until the 24th day of February, 1885, and that on that day the defendant finally broke off all negotiations, and for the first time refused to pay said loss or any part thereof.

The evidence tended to show that shortly after the loss, negotiations were entered into and carried on, both personally and by letter, between the plaintiffs and the defendant's agent, for a settlement and compromise of the plaintiffs' claim for their loss; that said negotiations were of such nature as to hold out to the plaintiffs reasonable hopes that they would result in the settlement and payment of their claim, at least in part; that said agent was also the agent of a number of other insurance companies having policies on said saw-mill at the time of said loss, and that said negotiations included the plaintiffs' claims against all the other companies represented by said agent; that said negotiations actually resulted in a settlement and payment, in part, of the plaintiffs' claims against such other companies, and that their negotiations in relation to their claim against the defendant were pending up to and at the expiration of the six months after the fire.

The jury found the issues for the plaintiffs and assessed their damages at $1203.33, and for that sum and costs the plaintiffs had judgment. Said judgment has been affirmed by the Appellate Court, and is now brought here by appeal from that court.

Mr. MYRON H. BEACH, for the appellant:

The action can not be maintained, because not commenced in the time limited in the policy. The validity of such a condition can not be questioned. May on Insurance, sec. 478; *Insurance Co.* v. *Whitehill,* 25 Ill. 466; *Presbey* v. *Williams,* 15 Mass. 192; *Savings Bank* v. *Insurance Co.* 31 Conn. 517; *Ames* v. *Insurance Co.* 14 N. Y. 253.

Negotiations for and conversations about settlement are no waiver on the part of the defendant that can operate as a waiver of the condition of limitation. *Gordon* v. *Insurance Co.* 20 N. H. 73; *Ripley* v. *Insurance Co.* 29 Barb. 552; 30 N. Y. 136.

The fact of the sale by two of the partners, of their interest, to the other, was concealed in the application, and this renders the policy void. *Insurance Co.* v. *Brennan,* 58 Ill. 158; *Robinson* v. *Appleton,* 124 id. 276; *Dube* v. *Insurance Co.* 64 N. H. 527.

Messrs. FLOWER, SMITH & MUSGRAVE, for the appellees:

The contract between the assured is not a conveyance of the property so as to fall within the terms of the conditions of the policy as to change of title, because, first, it was made before the policy; and second, because it is a contract for a conveyance, only. *Kempton* v. *Insurance Co.* 62 Iowa, 83.

The sale to a partner, where no new owner is introduced, the partner selling retaining an insurable interest, does not avoid the policy. *Powers* v. *Insurance Co.* 136 Mass. 108; *Drennan* v. *Assurance Co.* 20 Fed. Rep. 657; *Assurance Co.* v. *Scammon,* 126 Ill. 355.

Mr. JUSTICE BAILEY delivered the opinion of the Court:

The record contains evidence tending to support the plaintiffs' replication to the defendant's plea setting up the limitation clause in the policy, but whether said evidence is sufficient to sustain the verdict of the jury upon that issue is purely a question of fact as to which the judgment of the Appellate Court is conclusive. We must therefore assume that said replication, or at least enough of its averments to constitute a sufficient answer to said plea, were duly proved. We have only to consider whether any error of law was committed in the mode in which that question was submitted to the jury.

On this question the court instructed the jury, at the instance of the plaintiffs that "even though they should find from the evidence that this action was not brought within the six months limitation named in the policy, yet, if they still further find from the evidence that, from the date of the fire up to the time the suit was commenced, there were pending negotiations between the plaintiffs and the defendant company or its agents in reference to the settlement or adjustment of the loss in question, and that the company or its agents, by holding out reasonable hopes of an adjustment or settlement, deterred the plaintiffs from bringing their suit within the time limited, then in such case the defendant company is estopped from setting up the limitation clause as a defense in this cause."

The defendant asked the court to instruct the jury that if the suit was not brought within six months after the fire occurred, the plaintiffs could not recover, unless they had proved that the commencement of the suit was delayed at the special instance and request of the defendant. This instruction was modified by the court so as to hold that the plaintiffs could not recover unless they had proved that "the company or its agents induced the plaintiffs to delay the bringing of a suit within the time limited in the policy for bringing suit, by holding out reasonable hopes of an adjustment or settlement of the plaintiffs' claim."

The defendant also asked the court to give to the jury an instruction holding that the offer by the defendant to pay any sum to settle, or with a view of effecting a settlement of plaintiffs' claim, was not to be taken or considered as an admission by the defendant of any liability to the plaintiffs, and should not be considered as evidence of any obligation on the part of the defendant to pay the plaintiffs' claim, or of indebtedness by the defendant to the plaintiffs.     This instruction the court modified by adding thereto as follows:     "But it may be considered in connection with all the other evidence in the case, in determining whether there was any waiver of the limitation clause of the policy by the company."

The defendant asked the court to give to the jury another instruction holding that, the offer to pay a sum in settlement of the claim could not be considered by them as a waiver of said condition, nor as an inducement to the plaintiffs to delay the commencement of an action.     This instruction was modified so as to hold merely that, the offer to pay a sum in settlement of the claim, in itself alone, could not be considered by the jury as a waiver of said condition.

The defendant also asked the court to give the following instruction:

"The court instructs the jury, that the burden of showing a waiver of the condition requiring the action to be commenced within six months after the loss occurred, is on the plaintiffs; and they must show the same by clear and positive evidence, that the defendant requested the plaintiffs to delay the commencement of suit or action.     Such request on the part of the defendant can not be inferred."

This instruction was modified and given in the following form:

"The court instructs the jury, that the burden of showing a waiver of the condition requiring action to be commenced within six months after the fire occurred, is on the plaintiffs, and they must show the same by a preponderance of the evidence, or they can not recover in this action."

We are of the opinion that the rules of law here involved were correctly given to the jury. The main propositions which the defendant sought, without success, to have embodied in the instructions were, that to show a waiver by the defendant of the limitation clause in the policy, it was incumbent upon the plaintiffs to prove that their delay in bringing suit was at the special instance and request of the defendant, and also, that such proof could only be made by positive evidence, and could not be inferred. That such is not the law is clearly established by the authorities. Thus, in *Peoria M. & F. Ins. Co.* v. *Whitehill*, 25 Ill. 466, where the question arose in this State for the first time, the rule was laid down as follows: "Where an insurance company shall, by fraud, or by holding out reasonable hopes of an adjustment, deter a party assured, being under such a condition to sue, from commencing his suit, he honestly confiding in the pretenses and promises of the assurer, the condition would be no bar." This statement of the law has been cited with approval in various subsequent cases. *F. & M. Ins. Co.* v. *Chesnut*, 50 Ill. 111; *Derrick* v. *Lamar Ins. Co.* 74 id. 404; *Home Ins. Co.* v. *Myer*, 93 id. 271.

The same doctrine obtains in other States. In *Martin* v. *State Ins. Co.* 44 N. J. L. 485, it is said: "If the delay to bring suit is a result to which the company mainly contributed, by holding out hopes of an amicable adjustment, the company can not be permitted to take advantage of the delay, under the limitation clause of the policy." In *Mickey* v. *Burlington Ins. Co.* 35 Iowa 174, an instruction was given to the jury holding that, if the plaintiff delayed bringing suit after the expiration of six months, in consequence of inducements held out by the defendant's officer, causing him to believe that the loss would be paid or adjusted without suit, this would operate to remove the bar created by the condition of the policy requiring an action thereon to be brought within six months after the loss. The court, in sustaining this instruction, said: "A course of conduct on the part of defendant, or representations of its officers,

which would give reasonable ground upon which plaintiff did in fact base the belief that his claim would be settled, would estop defendant to set up the limitation provided by the policy. It would be contrary to justice for defendant to hold out the hope of an amicable adjustment of the loss and thus delay the action of plaintiff, and then be permitted to plead this very delay, which was caused by its own representations, as a defense to the action when brought." See also, *St. Paul F. & M. Ins. Co.* v. *McGregor,* 63 Tex. 399; *Ripley* v. *Ætna Ins. Co.* 29 Barb. 552; *Barnum* v. *Mer. F. Ins. Co.* 97 N. Y. 188; *McFarland* v. *Peabody Ins. Co.* 6 W. Va. 425; *Peoria Ins. Co.* v. *Hall,* 12 Mich. 202.

It is true the plaintiffs in the present case, in their replication, in addition to alleging that the defendant held out reasonable hopes for an adjustment, and thereby deterred the plaintiffs from commencing their suit and that the plaintiffs honestly confided in the promises and pretenses of the defendant, also allege that they delayed bringing suit at the request of the defendant. This latter allegation, however, was unnecessary, as the other matters alleged in the replication, and which the evidence tended to prove, constituted of themselves a sufficient answer to the plea setting up the limitation clause. It was proper therefore to disregard the allegation of a request by the defendant to delay bringing suit as mere surplusage.

We have now to consider whether any error of law was committed by the trial court in respect to the defenses sought to be based upon the other conditions of the policy. On this branch of the case our attention is directed mainly to the clause which provides, that the policy shall become void and of no effect "by a failure or neglect of the assured to notify this company that a contract has been signed to sell the property so insured." The facts are, that on and prior to September 7, 1883, the plaintiffs were partners under the firm name of Little, Peck & Co., and as such partners, were the owners of a leasehold interest in certain lands in Duluth, Minnesota,

and were also owning and operating a steam saw-mill and appurtenances situated on said lands, said saw-mill and appurtenances being the property afterward insured by the policy now in suit.   On said 7th day of September, 1883, the plaintiffs, with a view, as the evidence tends to show, of ultimately dissolving their partnership, entered into an agreement among themselves by which Little and Peck agreed to sell their undivided two-thirds interest in the leasehold estate in the lands and also the saw-mill and appurtenances, to Simonds, for $16,667, of which Simonds was to pay $2500 in three days, $2500 in fifteen days, $5000 in forty-five days, and the residue in six months, the conveyance to be made January 1, 1884. Simonds made various payments aggregating $7000, leaving $9667 and interest unpaid, and as he was unable to make further payments, neither party took any further steps to perform the agreement or to enforce further performance of the other party. The title to the property, so far as it was affected by the agreement, was in this situation on the 21st day of June, 1884, the date of the policy, and so remained at the date of the loss.

We are of the opinion that the above mentioned condition requiring notice to the insurance company of any contract to sell the property insured, must be held to apply only to contracts of sale between the assured and third parties, and that it can have no application to contracts between the assured themselves for the sale or transfer of their respective interests as partners or joint owners.   The word "sale" as here used should doubtless receive the same interpretation which properly belongs to it when used in those conditions which provide that a policy shall become void upon alienation of the property by sale or otherwise.   The preponderance of authority in this country is clearly to the effect that such condition is not broken by a sale by one partner to another of his joint interest, at least, so long as the party selling retains an insurable interest in the property insured.

In Angel on Insurance, sec. 197, it is said: "When several owners of property are jointly insured, a sale by one of the owners of his interest in the premises to the other owners, is not such an alienation of the property as will avoid the policy, even under an express provision in the act under which the insurance company is incorporated, declaring that when any property insured with such company shall be alienated by sale or otherwise, the policy shall become void. Yet if the assignor had conveyed his interest to a stranger, the policy would cease to operate as to that share at least." Also Mr. May, in discussing the question whether a sale by one joint owner to another is such alienation as will avoid the policy, says: "The better opinion seems to be, that it is not strictly an alienation—a transfer from one to another—but rather a shifting of interests amongst joint owners, without the introduction of any stranger to the number of the insured. So far as the contract is based upon the personal qualities of the insured, there is no increase of risk, because no element of improvidence or carelessness is introduced, and the property insured will still be under the care and management of the original parties." May on Insurance, sec. 279.

It is held in numerous cases that, where an insurance policy is issued to a partnership, a transfer by one partner to the others of all his interest in the partnership property, will not vitiate the insurance, notwithstanding a condition that the policy should become void if the property should be sold or conveyed, or the interest of the parties therein changed. *Burnett* v. *Eufaula Home Ins. Co.* 46 Ala. 11; *Hoffmam* v. *Ætna Fire Ins. Co.* 32 N. Y. 405; *Cowan* v. *Iowa State Ins. Co.* 40 Iowa, 551; *Powers* v. *Guardian Ins. Co.* 136 Mass. 108; *Pierce* v. *Nashua Fire Ins. Co.* 50 N. H. 297; *West* v. *Citizens' Ins. Co.* 27 Ohio St. 1; *Lockwood* v. *Middlesex Mut. Assur. Co.* 47 Conn. 553; *Dermani* v. *Home Mut. Ins. Co.* 26 La. Ann. 69; *Drennen* v. *London Assur. Corp.* 20 Fed. Rep. 657.

In some of the cases it is held that, where one of several joint owners in whose names the property is insured, transfers his interest in the property to the other joint owners, so as to retain in himself no insurable interest, no recovery can be had on the policy, but this is not because of the forfeiture imposed by the condition against alienation, but because, at common law, the suit must be brought in the joint names of the insured, and as the assigning plaintiff would have no insurable interest, no recovery could be had in his name. This seems to have been the real ground upon which the decision of this court was based in *Dix* v. *Mercantile Ins. Co.* 22 Ill. 272, although the court, after sustaining the judgment of the court below on this ground, went further and held, that the assignment by a partner to his copartners of all his interest in the property insured was a breach of the condition of the policy in that case. It should be observed, however, that said condition provided that the policy should be void in case of "any transfer or change of title of the property insured, or *of any undivided interest therein,*" a condition which may well be construed as applying even to a sale by one partner to the other partners of his interest in the partnership property. It is not inconsistent with the rule established in that case, therefore, to hold that a sale by one partner to another of his interest in the property insured in the firm name, is not a breach of a condition merely providing generally against alienation by sale, so long, at least, as the party selling retains an insurable interest in the property insured.

Upon substantially the same grounds, it must be held, that the contract to sell contemplated by the condition of the policy in this case, was a contract between the insured or some of them and some third party. The actual interests of partners in the firm property are necessarily fluctuating, and there seems to be no particular reason why the insurers should wish to keep the ownership unchanged as between them, so long as all retain an insurable interest. The effect of the contract in

this case was merely to modify the relative rights of the partners to a certain extent, leaving them all interested in the firm and its property, and admitting no stranger to the possession or control of the property insured.

The instructions to the jury upon this branch of the case were in harmony with the views above expressed, and we are of the opinion that they are subject to no just criticism.

It is further objected that there was such change in the possession of the property insured as should be held to be a breach of the condition which provided that the policy should be void and of no effect if there should be any change in the possession of the property insured. The change of possession here referred to clearly must be some change during the term of the policy, and it is sufficient to say, that there is no evidence tending to show any such change of possession. Little and Simonds were in possession at the date of the policy, and their possession continued without interruption or change down to the time of the fire. There was no condition or stipulation in the policy that Peck, the other member of the firm insured, should be in possession, but merely that the possession should remain during the term of the insurance as it was at its commencement.

Those conditions of the policy relating to misrepresentations or concealments as to the situation or occupancy of the property or the interest of the insured therein, are in that clause which refers to an application, plan, survey or description, and assumes to make such paper a part of the policy and a warranty by the insured. The record, however, fails to disclose the existence of any such paper, and so the clause which refers to it and attempts to prescribe its place and effect as a part of the contract, and to determine the consequences of misstatements or omissions therein, must be regarded as inapplicable to the facts in the case, and therefore nugatory.

After a patient investigation, we are unable to find any material errors in the record. The judgment of the Appellate Court will therefore be affirmed.           *Judgment affirmed.*