St. Clara Female Academy vs. Northwestern Nat. Ins. Co. and others.

utmost office, it might easily happen that he would be no nearer to his ultimate recovery. He might still be put to his appeal and a full prosecution of his claim in the circuit court. The law favors directness, rather than circuity, of action. The plaintiff was not limited to the remedy by *mandamus.* He had an election. It was within his election to bring his action in the usual way, directly against the city. *Sharp v. Mauston,* 92 Wis. 629.

*By the Court.—* The order of the circuit court is affirmed, and the cause is remanded for further proceedings according to law.

TRUSTEES OF ST. CLARA FEMALE ACADEMY OF SINSINAWA MOUND OF THE STATE OF WISCONSIN, Appellant, vs. THE NORTH-WESTERN NATIONAL INSURANCE COMPANY OF MILWAUKEE, WISCONSIN, Respondent.

SAME, Respondent, vs. SAME, Appellant.

SAME, Appellant, vs. THE DELAWARE INSURANCE COMPANY, Respondent.

SAME, Respondent, vs. SAME, Appellant.

SAME, Appellant, vs. THE MILWAUKEE MECHANICS' INSURANCE COMPANY OF MILWAUKEE, WISCONSIN, Respondent.

SAME, Respondent, vs. SAME, Appellant.

SAME, Appellant, vs. THE ROCKFORD INSURANCE COMPANY OF ROCKFORD, ILLINOIS, Respondent.

SAME, Respondent, vs. SAME, Appellant.

*December 13, 1897 — January 11, 1898.*

*Insurance against fire: "Unconditional ownership:" Waiver: "Total loss:" Damages: Attorneys' fees.*

1. Where an insurance policy contains a provision to the effect that it shall be void if the title of the assured to the property covered by the policy is other than sole and unconditional, if the agent who solicits the insurance, receives and transmits the application, delivers the policy, and receives the premium, knows at the time

---

*Margin citations:*
98 257
s101 466

98 257
55 LRA 278
56 LRA 787n
56 LRA 791n

98 257
60 LRA 920

St. Clara Female Academy vs. Northwestern Nat. Ins. Co. and others.

of such delivery that the title of the assured is other than sole and unconditional, the provision in that regard is waived; and such is the case notwithstanding the policy also contains a provision prohibiting the agent from waiving any of its conditions, except in writing thereon or attached thereto.

2. Where such agent knows that the interest of the assured is other than sole and unconditional, and insures the whole title, if the assured has an insurable interest, the recovery on the policy in case of loss is not affected by the mere fact that another person also had an interest therein.

3. When a building has been so damaged as to lose its specific character as such, and it can no longer be called a building, then it is wholly destroyed within the meaning of sec. 1943, R. S.

4. When the structure has been destroyed so as to leave nothing but badly damaged foundation walls, it has been wholly destroyed as a matter of law, within the meaning of the statute referred to.

5. The words "wholly destroyed," as used in the statute, refer to the thing insured, not solely its value.

6. If a building, when in process of construction under an entire building contract which provides that the owner shall insure it in the names of the owner and contractor for such sums from time to time as they may agree upon, loss, if any, payable as their interests shall appear, be insured by such owner in his own name alone, but for a sum intended to cover the entire property, no agreement having been made with the contractor under the terms of the contract, and it be destroyed and thereafter rebuilt by such contractor, the amount recoverable on the policies cannot be diminished:

  (a) From the mere fact of such restoration;

  (b) In any event, unless the facts showing such restoration solely under the terms of the building contract are pleaded as a defense and established by evidence;

  (c) From the fact that some other person whom the assured had a right to represent had an interest in the property.

7. Where separate judgments are rendered against insurance companies joined as defendants, whether originally so joined or thereafter by a consolidation of actions separately brought, the attorney's fees recoverable against each such defendant are limited to $20 under ch. 235, Laws of 1893.

[Syllabus by MARSHALL, J.]

APPEALS from judgments of the circuit court for Dane county: R. G. SIEBECKER, Circuit Judge. *Affirmed in part; reversed in part.*

Plaintiffs, while their building was in process of construction by a contractor under an entire contract which contained a provision requiring the owners to insure such building during its construction for the protection of the contractor, in such sums, from time to time, as the owner and the contractor might agree upon, and before any part of the build ing had been accepted except the substructure, applied to defendants' agent for insurance thereon. The agent knew that the building was being constructed under contract, and suggested that the completed building should carry insurance to the amount of $25,000, and that $15,000 of insurance be placed on it in the condition it then was. The whole matter of placing the insurance was then left with the agent, by whom the property was insured under five policies, one of which was issued by each of the companies mentioned at the head of this statement, the aggregate amount of the insurance being $15,000. Thereafter, and when the policies were in force and the building still in process of construction and the relations between plaintiffs and the contractor substantially the same as when the policies were issued, the building was totally destroyed by fire, unless there be some question as to total destruction by reason of there being salvage allowed on the basement. The amount paid for the basement was $3,500; $6,000 additional had been paid to the contractor on the building. The proofs of loss contained a copy of the contract with McAlpine, the builder, and particular reference was made therein to the clause which required the owners to insure the property in their names and that of the contractor, for such sum as should be agreed upon from time to time, to cover the labor and material incorporated into the building, loss, if any, payable to the parties as their interests might appear. The proofs further set forth that McAlpine had an interest in the building at the time of the fire, under the building contract. A separate action was brought against each of the insurance companies

St. Clara Female Academy vs. Northwestern Nat. Ins. Co. and others.

above named, in which McAlpine was joined as a defendant. The fifth insurance company settled with the plaintiffs. Such proceedings were had in the four actions that they were consolidated under the statute, and the same was dismissed as to McAlpine, it appearing that he had no right of action against the companies. There was no question on the trial but that the foundation of the building was the only part accepted by the plaintiffs before the fire, and that $6,000 was all that had been paid to such contractor in addition to payment for the basement. The evidence was conclusive also that the loss on the basement was $1,926; that the loss on the entire building exceeded the face of the policies.

The court decided, at the close of the evidence, that all the questions of fact were established beyond controversy, leaving only questions of law to be determined in the case, and thereupon decided that the interest of the plaintiffs in the building at the time of the fire, measured by the cost of the basement and that which had been paid on the superstructure, less the salvage on the basement and a proportional amount paid by the fifth insurance company that had settled, was the limit of the amount to be recovered of the other four insurance companies, to be divided between them in proportion to the face of their policies, and on that basis directed verdicts as follows: Against the *Northwestern National Insurance Company* for $2,592.18, with interest thereon from February 16, 1894, and against each of the other insurance companies for $1,296.09, with like interest. Separate verdicts were returned accordingly. Plaintiffs moved the court to direct a verdict in their favor against each of the companies for the full amount of the policies, which was denied. Other motions were made by plaintiffs and by the several defendants, by their respective attorneys, which were denied, and due exceptions taken so as to present here all the questions discussed in the opinion. Judgments were thereupon rendered against each of the defend-

St. Clara Female Academy vs. Northwestern Nat. Ins. Co. and others.

ants in accordance with the verdicts. An appeal was taken by the plaintiffs from each judgment, and a separate appeal was also taken by each of the defendants.

For the plaintiffs there were briefs by *Bashford, Aylward & Spensley*, and oral argument by *R. M. Bashford* and *J. A. Aylward*. They argued, among other things, that the identity of the building was destroyed. The loss was therefore total, or at least the question should have been submitted to the jury. *Lindner v. St. Paul F. & M. Ins. Co.* 93 Wis. 526, 532; *Dick v. Equitable F. & M. Ins. Co.* 92 id. 46, 54; *Seyk v. Millers' Nat. Ins. Co.* 74 id. 67; *Harriman v. Queen Ins. Co.* 49 id. 72, 85; *Williams v. Hartford Ins. Co.* 54 Cal. 450; *Oshkosh P. & P. Co. v. Mercantile Ins. Co.* 31 Fed. Rep. 200; *Hamburg-Bremen F. Ins. Co. v. Garlington,* 66 Tex. 103; 1 Wood, Fire Ins. § 107. The plaintiffs had an insurable interest in the property at the time the policies were issued, and at the time of the loss. *Sawyer v. Dodge Co. M. Ins. Co.* 37 Wis. 503, 539, 540, 546; *Appleton Iron Co. v. British Am. Ass. Co.* 46 id. 23; *Johannes v. Phenix Ins. Co.* 66 id. 50; *Hooper v. Robinson,* 98 U. S. 528; *Harrison v. Fortlage,* 161 id. 57, 65. Liability to others for destruction of the property confers insurable interest. 1 Wood, Fire Ins. §§ 282, 296; *Berry v. Am. Cent. Ins. Co.* 132 N. Y. 49; *Eastern R. Co. v. Relief F. Ins. Co.* 105 Mass. 570; *Russell v. Union Ins. Co.* 4 Dall. 421; *Wheeler v. Ins. Co.* 101 U. S. 439; *Brugger v. State I. Ins. Co.* 5 Sawyer, 304. If the plaintiffs had an insurable interest the fact that some other person may be equally entitled to the insurance will not affect the liability of the defendants. 1 Wood, Fire Ins. §§ 278, 299; *Bicknell v. Lancaster C. & C. F. Ins. Co.* 58 N. Y. 677; *Insurance Co. v. Chase,* 5 Wall. 509; *Waring v. Indemnity F. Ins. Co.* 45 N. Y. 606; *Sturm v. Atlantic M. Ins. Co.* 63 id. 77; *Home Ins. Co. v. Baltimore W. Co.* 93 U. S. 527; *Phœnix Ins. Co. v. Erie & W. Transp. Co.* 117 id. 312; *California Ins. Co. v. Union C. Co.* 133 id. 387. The fact that

the amount of loss has been received from another does not, in all cases, defeat a recovery from the insurance company, unless the payment arises from contract, to the benefit of which the insurer can properly make claim, and unless such claim is seasonably asserted. 4 Joyce, Ins. § 3742; *People's Ins. Co. v. Straehle,* 2 Cin. Super. Ct. (Ohio), 186; *Commercial U. Ass. Co. v. Scammon,* 126 Ill. 355; *Niagara F. Ins. Co. v. Scammon,* 144 id. 490; *Commercial U. Ass. Co. v. Scammon,* id. 506; *Commercial U. Ass. Co. v. Scammon,* 133 id. 627; *West of Eng. F. Ins. Co. v. Isaacs* [1897], L. R. 1 Q. B. 226.

*H. W. Chynoweth,* for the defendants, contended, *inter alia,* that the contention of the plaintiffs amounts to this, that, notwithstanding the fact that they have received full indemnification from the contractor, by virtue of the liability he was under to them by reason of the contract between them, they are entitled to indemnification a second time by a recovery on these policies. The fundamental principles governing contracts of insurance are in the teeth of such contention. A policy of fire insurance is a contract of indemnity. *Johannes v. Phenix Ins. Co.* 66 Wis. 50, and case cited. Where there is a contract of indemnity and a loss happens, anything which reduces or diminishes that loss reduces or diminishes the amount which the indemnifier is bound to pay. *Burnand v. Rodocanachi, Sons & Co.* 7 App. Cas. 333, 339; *Castellain v. Preston,* 11 Q. B. Div. 380; *Chicago, St. L. & N. O. R. Co. v. Pullman Southern Car Co.* 139 U. S. 79, 88; *Flannagan v. Camden Mut. F. Ins. Co.* 25 N. J. Law, 506; *Pentz v. Ætna F. Ins. Co.* 9 Paige, 568; *Carpenter v. Providence Washington Ins. Co.* 16 Pet. 503; *Franklin F. Ins. Co. v. Hamill,* 6 Gill (Md.), 87; *Illinois Mut. F. Ins. Co. v. Andes Ins. Co.* 67 Ill. 362; *Security Ins. Co. v. Farrell,* 2 Ins. L. J. 302; *United Ins. Co. v. Robinson,* 2 Caines, 280; May, Ins. §§ 2, 7, 456a; Porter, Ins. 1, 2, 221; Wood, Fire Ins. §§ 117, 502, 503; *Friemansdorf v. Watertown Ins. Co.* 9 Biss. 167; 4

Joyce, Ins. § 3541; *Dilling v. Draemel*, 30 N. Y. St. Rep. 435; Sheldon, Subrogation, § 222; *Atlantic Ins. Co. v. Storrow*, 5 Paige, 285; *Carstairs v. Mechanics' & T. Ins. Co.* 18 Fed. Rep. 473; *Commercial U. Ass. Co. v. Lister*, L. R. 9 Ch. App. 483; *Smidmore v. Australian G. L. Co.* 2 N. S. W. 219.

For the defendant *Delaware Ins. Co.* there were briefs by *F. J. & C. F. Lamb*, and oral argument by *F. J. Lamb*. They contended, *inter alia*, that McAlpine was owner of and had ownership in the structure above the basement until completed and ready for delivery. *Marshall v. Pearce*, 34 La. Ann. 559; *Goodman v. Buerlocher*, 88 Wis. 287; *Tompkins v. Dudley*, 25 N. Y. 272; *Mucklow v. Mangles*, 1 Taunt. 318; *Merritt v. Johnson*, 7 Johns. 473; *Andrews v. Durant*, 11 N. Y. 35; *Adams v. Nichols*, 19 Pick. 275; *Cushing v. Williamsburg C. F. Ins. Co.* 4 Wash. 538. The policy cannot be extended to cover any interest of McAlpine, or other interest of the sisters than sole and unconditional ownership, because by its express provisions any such interest, if established, would avoid the policy.

MARSHALL, J. The questions presented on these appeals are: (1) Were the policies void because of a breach of the condition in respect to the title of the assured being sole and unconditional? (2) If the condition in that regard was waived, did the policies cover the entire building, or only the interest of the plaintiffs? (3) What is the amount for which the defendants were liable under the policies? (4) Has such amount been diminished by the completion of the building by the contractor under his obligation so to do? (5) Did the court err in not limiting the attorney's fees taxed and included in each judgment to $20? These questions will be considered in their order.

1. No question is raised but that H. B. Hobbins, who took the application for the insurance, received the premiums, and delivered the policies, was the agent of defendants within

the meaning of sec. 1977, R. S., and competent at the time
the policies were delivered to waive the condition therein in
respect to title, notwithstanding the clause prohibiting any
waiver of the conditions or provisions of the policies except
in writing thereon or attached thereto. The law in that re-
gard is firmly established, and nowhere more so than by the
decisions of this court. *Renier v. Dwelling House Ins. Co.*
74 Wis. 89; *Goss v. Agricultural Ins. Co.* 92 Wis. 233; *Carey
v. German Am. Ins. Co.* 84 Wis. 80; *Dowling v. Lancashire
Ins. Co.* 92 Wis. 63. Such decisions, and numerous others,
are to the effect that if the agent delivers a policy of insur-
ance and receives the premium, with knowledge that the title
to the property insured is other than sole and unconditional,
it is in effect the act of the company and constitutes an effect-
ual waiver of the conditions in that regard. Such cases rule
this, as there is no reasonable controversy but that Hobbins
knew substantially all the facts in regard to the interest of
the contractor, McAlpine, in the building, which is the only
interest claimed to have existed in breach of the condition
under consideration. True, there is no direct evidence that
Hobbins knew the exact terms of the building contract, but
he knew that the construction of the building was going on
under contract with McAlpine, and advised plaintiffs to in-
sure it to the full amount of $15,000, because, as he said,
he did not know McAlpine. There is no reasonable explana-
tion of this other than that the agent assumed that the con-
tract was entire, but that, in his judgment, plaintiffs should
insure the building in their own names for all it would carry,
for their protection, independent of the liability of the con-
tractor, " because he (Hobbins) did not know him." That
shows, if it shows anything, that the agent knew that the
contractor had a builder's interest in the structure, and that
his opinion in that regard would not have been more definite
if he had seen and read the contract. The trial court was
right in considering such facts established conclusively by

the evidence, and holding the policies binding on defendants, freed from the condition in respect to the title.

2. The question of whether the whole building was insured, or only the interest of plaintiffs, is practically answered by what has preceded. The claim that the intention was to insure only that part of the building which had been accepted, that is, the foundation, is without any evidence or a single circumstance in the case to support it, except the testimony of the agent Hobbins that he was not requested, and did not intend, to insure the builder's interest. 'That was his conclusion, which counts for nothing in the case as against what was actually said and done.' He testified that the plaintiffs applied for $20,000 of insurance; that he influenced them to make it $25,000; that he inquired who the contractor was, and on being informed in that regard said he did not know him and would advise plaintiffs to insure the building then; that his language was: "I told them I would bind that amount of insurance on the building in the condition it then was;" that thereupon the whole matter was left to him, and he placed the $15,000 of insurance and agreed to place $10,000 additional when the building was nearer completion. In view of that evidence, the fact stands out prominently and beyond reasonable dispute that Hobbins and plaintiffs intended to insure the entire building at a valuation of $15,000 as it stood when the policies were issued.

3. On the question of whether the building was wholly destroyed, the evidence appears to be quite as conclusive as on the other questions discussed. It was practically annihilated down to the foundation, and that was so injured that about half of the original cost was required to put it in shape for use again. A considerable portion of it had to be removed down to the footing stones, and the balance required extensive repairs. As a matter of law that was a total destruction of the building within the meaning of sec. 1943,

R. S., which provides that when real property, covered by insurance, "shall be wholly destroyed, . . . the amount of the insurance written in such policy shall be taken conclusively to be the true value of the property when insured, and the true amount of loss and measure of damages when destroyed." That statute has been several times construed heretofore, and most recently in *Lindner v. St. Paul F. & M. Ins. Co.* 93 Wis. 526, where it was held, in effect, that total loss under the statute does not mean that the material of which the building is composed shall be annihilated or reduced to a shapeless mass; that when the identity of the structure as a building is destroyed, so that its specific character as such no longer remains and there is nothing left but the cellar walls and a dilapidated foundation, the loss is total within the meaning of the statute. There are many authorities elsewhere to the same effect, and it is so laid down by standard text writers.

In May, Ins. § 421*a*, it is said that 'total loss exists when the building has lost its identity as such, so that it cannot be designated as a building, though some part of it may yet be standing.' In *Hamburg-Bremen F. Ins. Co. v. Garlington*, 66 Tex. 103, it was said, in effect, that total loss does not mean an absolute extinction of the building; that the test is whether the building has lost its identity and specific character, so that it can be no longer called a building. To the same effect are *Williams v. Hartford Ins. Co.* 54 Cal. 450, Beach, Ins. § 1291, and Wood, Fire Ins. § 107. In *Oshkosh Packing & Provision Co. v. Mercantile Ins. Co.* 31 Fed. Rep. 200, the term "wholly destroyed," as used in our statute, was considered and construed as not meaning more than such destruction of the building as that, though some part still remains standing, it cannot be longer designated as a building. Evidently, from the report of the case, some part of the building covered by the policy under consideration was left standing after the fire; yet, as there was no con-

troversy but that such part was not sufficient to constitute, in any sense, a building, the court held as a matter of law that such building was wholly destroyed and the loss total.

There are authorities to the effect that if there is any part of the building left, worth more in place than the cost of removing it, the destruction is not complete within the meaning of valued policy statutes. In Ostrander's work on Fire Insurance [2d ed., § 310] and in an article on the subject found in 33 Cent. L. J. 319, written by a prominent member of the bar of this court, it is contended that such is the correct construction of our statute, and that this court has impliedly, if not directly, so held, and referred the words "totally destroyed" to the value of the thing insured instead of the thing itself. It is not considered that there is any legitimate warrant for such view in anything said by the court in its published opinions. In *Harriman v. Queen Ins. Co.* 49 Wis. 71, where the building was destroyed down to the foundation, and that was injured so as not to be in a suitable condition for use in a new building, the court said, the destruction, within the meaning of the statute, was total, but declined to lay down any rule applicable to other cases, and did not place the decision on the theory that the destruction contemplated by the statute was solely that of value. In *Seyk v. Millers' Nat. Ins. Co.* 74 Wis. 67, while it was stated that there was no part of the building left standing, of any value, the decision that the destruction was total was placed on the ground that *the identity of the thing insured was so far annihilated that it no longer existed as a building.* The authority referred to and approved was Wood, Fire Ins., *supra*, to which one of the cases cited is *Harriman v. Queen Ins. Co., supra*. The text writer says: "Loss is total within the meaning of the term when the identity and specific character of the thing insured is destroyed, although there is not an absolute extinction of the parts." As best illustrating the rule, *Judah v. Randal*, 2 Caines, Cas. 324,

St. Clara Female Academy vs. Northwestern Nat. Ins. Co. and others.

is cited, where the property insured was a carriage. It was all destroyed but the wheels. The court held that the destruction was complete as applied to the specific thing insured, the carriage. That was followed in *Lindner v. St. Paul F. & M. Ins. Co.* 93 Wis. 526, as the settled doctrine of this court. Our statute deals with the specific thing insured, not solely the value. Its purpose was not only to prevent frauds by overinsurance, but to remove the temptation, on the part of insurance companies, to demand and secure settlements for losses for less than the amounts called for by the contracts of insurance, where the structures insured have been, as such, substantially destroyed. To hold that, notwithstanding the statute, salvage can be claimed for any value left after a fire, even down to the footing stones of foundation walls, would be contrary to the uniform holding of this court on the subject, and of courts elsewhere under similar statutes, and would render the statute ineffectual to accomplish what it was designed to accomplish.

It follows from the foregoing that the evidence in this case establishes conclusively a case of total destruction of the building within the meaning of our statute; hence that the amount named in the policies of insurance correctly measured the plaintiffs' damages at the time of the fire.

4. But it is said the policies of insurance were contracts of indemnity, and as the builder, McAlpine, was bound to reconstruct the building after the fire, and did so, plaintiffs were fully indemnified except as to the foundation, which was accepted before the policies were issued, and cannot recover in excess of the loss for which indemnity has not been received. The weakness of this contention is threefold:

(a) The mere fact that the building was restored by the contractor does not show that such restoration was pursuant to the obligation of the building contract, independent of any claim for indemnity by the contractor against the

plaintiffs on account of the insurance clause in such contract, and the insurance of the building by them for an amount sufficient to cover the entire title thereto, including the interest of plaintiffs and such contractor. It was as competent for the builder to waive the provision that the insurance should be in his and the owners' names, loss payable to the parties as their interests might appear, as it was for the defendants to waive the condition of the policies against sole and unconditional ownership. Again, it was competent for plaintiffs to insure the whole building in their own names by the consent of the builder, notwithstanding the terms of the building contract provided otherwise, and such consent could have been given expressly or by implication. So the whole question between the plaintiffs and the builder, McAlpine, so far as appears from any proof in the case, is open.

(b) If the plaintiffs were indemnified by their contractor under his obligation to complete the building, and the defendants desired to rely upon that fact to reduce the damages otherwise recoverable under the policies, they should have set up such facts in the answers as a defense, and established them by evidence on the trial. No such defense appears to have been so pleaded or established, so the policies must stand unaffected by any claim for a reduction of the recovery thereon by reason of any claim that the plaintiffs have been otherwise indemnified.

(c) It being conceded that the plaintiffs had an insurable interest, and it having been decided that the condition in the policies in respect to sole and unconditional ownership was waived, and that the undisputed evidence makes a case of total destruction of the property insured, calling for payment of the face value of the policies as liquidated damages, that amount cannot be diminished by the fact alone that some other person, whom the plaintiffs had a right to represent, also had an interest in the building, even though such

person was required by contract to reconstruct such building. It is well settled that in the absence of fraud or mistake, unless otherwise provided by the contract of insurance, if the insured has some insurable interest in the property covered by such contract, the whole amount of damages to the property, not exceeding that named in the policy, is recoverable by such person if the damages thereto reach that sum, or if, by the contract itself and the law governing the subject, the face value of the policy must be taken as liquidated damages. *Andes Ins. Co. v. Fish,* 71 Ill. 620; *Trade Ins. Co. v. Barracliff,* 45 N. J. Law, 543.

5. Plaintiffs claimed the right to recover $20 attorney's fees, under ch. 235, Laws of 1893, and $25 under the general fee bill as well, against each defendant, and prevailed on such claim. That is assigned as error. Such chapter provides that several insurance companies, interested in the same loss, may be joined as defendants; that in case of a recovery against them, separate verdicts and judgments shall be rendered; and that there shall be included in each such judgment an attorney's fee of $20. In a proper case for such joinder of defendants, if separate actions are brought, they may be consolidated on motion, under sec. 2792, R. S. *Gross v. Milwaukee Mechanics' Ins. Co.* 92 Wis. 656. When so consolidated, the provisions of the act of 1893 as to costs apply, the same as if one action had been brought against all in the first instance, as permitted by law. It is considered that such provisions are exclusive and limit the attorney's fee to $20 against each defendant, and that the ruling of the trial court to the contrary was error.

It follows from the foregoing that each of the insurance companies is liable to the plaintiffs for the full amount mentioned in its contract of insurance, and that the trial court should have directed verdicts accordingly, at the close of the evidence, on plaintiffs' motion therefor. But, in accord-

ance with the established practice of this court where there is no verdict left undisturbed by the result here upon which a judgment can be rendered when the case again reaches the trial court, the judgments appealed from must be reversed on plaintiffs' appeals as to damages, and on defendants' appeals as to costs, and the cause be remanded for a new trial.

*By the Court.*— On plaintiffs' appeals the judgments are reversed as to damages, and on defendants' appeals such judgments are reversed as to costs. Full costs are allowed to plaintiffs in this court on their appeals, except that only one fourth of the costs for printing their case and brief shall be taxed on each appeal. Defendants are allowed clerk's fees on their respective appeals, but no other costs.