FISCHER, Respondent, vs. HARMONY TOWN INSURANCE
COMPANY, Appellant.

*October 22—November 26, 1946.*

For the appellant there were briefs by *Stanley W. Slagg* of Edgerton, attorney, and *Wilkie, Toebaas, Hart & Jackman* of Madison of counsel, and oral argument by *Mr. Slagg* and *Mr. Horace W. Wilkie.*

For the respondent there was a brief by *McGowan, Geffs, Geffs & Block* of Janesville, and oral argument by *Eli Block* and *Jacob Geffs.*

FRITZ, J.    When plaintiff's barn and other property were damaged by a fire on May 12, 1944, there was in effect a policy issued by defendant for insurance in the amount of $3,000 on the barn and insurance on the other property for an amount in

excess of the damage thereto, which the parties agreed was $659.09. In relation to the barn, there was a dispute as to whether or not plaintiff sustained a total loss, as he claimed, and that therefore defendant was liable to him for the coverage of $3,000 on the barn. In relation to the extent of the damage to the barn, there was considerable conflict in the evidence, and the jury found in a special verdict that plaintiff sustained a total loss on the barn.

Defendant contends that finding is not supported by the evidence. The ground floor of the barn had concrete walls eight feet high, and there were eighteen steel cow stanchions with wooden liners, and wooden stanchions, box stalls, horse stalls, grain bins, a steel litter carrier and a milking machine and electric wiring. On the concrete walls of the ground floor there was a wooden superstructure twelve feet high, which was used as the haymow and had a wooden floor supported by seventy-six wooden joists resting on the concrete walls. Practically all of the wooden superstructure was destroyed or badly burned and charred by the fire, and the haymow floor was burned in spots, and about thirty-six of the wooden joists were badly burned and the remainder were damaged by water so that they could not be used again. As to the condition on the ground floor after the fire, there were conflicts in the evidence, but it can be deemed to warrant finding the following facts. The steel cow stanchions were not burned or damaged, excepting for rust and the burning of the wooden liners on two of them; and part of the milking machine and electric wiring remained so that the machine was used for milking the cows the next day after the fire and thereafter until fall. None of the ground-floor doors were burned except those on the east end, and most of the window lights were not broken but the window casings would not be usable as the result of damage by fire and water. Prior to the fire there were cracks in the concrete walls due to poor footings and heaving by frost, but they remained standing

after the fire, although they were checked and damaged by the heat and water so that the north wall was cracked and had larger holes in it; and since the fire the walls have been crumbling and became impaired and unusable for a new barn. The expense of removing them and salvaging the material would exceed its value for use in rebuilding. An inspector of sanitation and other requirements for Grade A milk, which plaintiff was selling before the fire, testified he would have to reject the milk if it was produced in a barn in which the remains of the plaintiff's barn were used in rebuilding. There was evidence which the jury could consider credible and sufficient to find that as the result of the fire the barn had lost its character and identity as a barn; that the concrete walls could not be utilized as a barn or foundation for a new superstructure for a haymow; and that the expense of removal of the salvable material would exceed the value thereof. Consequently, it was within the province of the jury to find, as it did, that as the result of the damage caused by the fire the barn was a total loss within the meaning of that term as stated and applied in *St. Clara Female Academy v. Northwestern Nat. Ins. Co.* 98 Wis. 257, 265, 268, 73 N. W. 767, to wit:

"On the question of whether the building was wholly destroyed, the evidence appears to be quite as conclusive as on the other questions discussed. It was practically annihilated down to the foundation, and that was so injured that about half of the original cost was required to put it in shape for use again. A considerable portion of it had to be removed down to the footing stones, and the balance required extensive repairs. As a matter of law that was a total destruction of the building within the meaning of sec. 1943, R. S. . . . That statute has been several times construed heretofore, and most recently in *Lindner v. St. Paul F. & M. Ins. Co.* 93 Wis. 526, where it was held, in effect, that total loss under the statute does not mean that the material of which the building is composed shall be annihilated or reduced to a shapeless mass; that when the identity of the structure as a building is destroyed, so that its specific

character as such no longer remains and there is nothing left but the cellar walls and a dilapidated foundation, the loss is total within the meaning of the statute. There are many authorities elsewhere to the same effect, and it is so laid down by standard text writers. . . . To hold that, notwithstanding the statute, salvage can be claimed for any value left after a fire, even down to the footing stones of foundation walls, would be contrary to the uniform holding of this court on the subject, and of courts elsewhere under similar statutes, and would render the statute ineffectual to accomplish what it was designed to accomplish."

To the same effect see *Harriman v. Queen Ins. Co.* 49 Wis. 71, 85, 5 N. W. 12; *Seyk v. Millers' Nat. Ins. Co.* 74 Wis. 67, 41 N. W. 443; *Eck v. Netherlands Ins. Co.* 203 Wis. 515, 234 N. W. 718.

In view of the rule, as stated and applied in those cases, there cannot be sustained defendant's contention that the court erred in using in the following instructions to the jury the italicized words, to wit:

"Total loss under the statute does not mean that the material of which the building is composed shall be annihilated or reduced to a shapeless mass; total loss is when the identity of the structure as a building is destroyed so that its specific character as such no longer remains, and *there is nothing left but the cellar or basement or walls or a dilapidated foundation . . . although the basement walls are still standing,* and even though the defendant claims that they were in the same or as good condition after the fire as they were before the fire (although there is evidence to dispute this fact) *and have retained their distinct character as part of the building, yet this of itself will not prevent the loss from being regarded as one of total loss.*"

Defendant also contends the evidence does not sustain the jury's finding that defendant, by its acts and conduct, through its duly authorized officers and agents, waived the policy provision that,—

"No suit or action on this policy, for the recovery of any claim, shall be sustainable in any court of law or equity . . . unless commenced within twelve months next after the fire."

In support of that contention defendant relies upon the decision in *Hart v. Citizens' Ins. Co.* 86 Wis. 77, 56 N. W. 332, in which this court held that when a policy provides that no action thereon for the recovery of any claim shall be sustained unless commenced "within twelve months next after the fire," the time limitation begins to run from the date of the fire, and not from the time when the liability is fixed and the right of action accrues.

That rule and the application thereof is subject, however,—as is claimed by plaintiff,—to the principle laid down in *Killips v. Putnam F. Ins. Co.* 28 Wis. 472, and *Black v. Winneshiek Ins. Co.* 31 Wis. 74,—

"that if the insurance company, by its acts, induces the insured to suspend his proceedings and delay action on the policy, the time elapsing during such delay so caused should not be reckoned as a part of the time limited for the bringing of the action." (86 Wis. 77, 80.)

And as the court said in relation to that principle in *Hart v. Citizens' Ins. Co., supra,—*

"It may well be that the insurer may by his acts waive the limitation, or estop himself from insisting on it, as held in the cases of *Killips v. Putnam F. Ins. Co.* 28 Wis. 472, *Black v. Winneshiek Ins. Co.* 31 Wis. 74, and *Thompson v. Phenix Ins. Co.* 136 U. S. 287; but the invocation of this principle does no violence to the contract of the parties." (p. 82.)

Plaintiff contends the jury's finding that by defendant's acts and conduct it waived the limitation provision of the policy was warranted by evidence to the following effect. The morning after the fire defendant's secretary, S. C. Hull, told plaintiff

not to worry that he would take care of things. During the summer of 1944 Hull took plaintiff to see about obtaining a priority to build a barn for plaintiff, and then went with plaintiff to a lumberyard and talked with the lumberman about getting lumber for the barn. Hull and plaintiff had many conferences during the twelve months after the fire, and there was no dispute and they agreed in June, 1944, as to the extent and amount of the damage to the other property covered by the policy, and in the fall of 1944 defendant offered to pay that amount. Their negotiations and controversy were solely as to the extent and amount of the damage to the barn. Hull suggested to plaintiff that defendant would settle the loss on the barn at $2,500, and there were negotiations between them to arrive at some agreeable settlement figure. Hull testified after July, 1944, plaintiff came to defendant's office periodically about every two months and wanted to know what defendant was going to do, and Hull told him defendant couldn't pay $3,000, "because we didn't think there was $3,000 in loss," and that plaintiff would not consider anything but $3,000; and that was the position of the company on all of the occasions that Hull talked to plaintiff. Throughout their negotiations defendant never claimed it was not liable under its policy for the loss on the barn. And as Hull testified in October, 1945, on an adverse examination,—until the papers were served (in August, 1945), there were negotiations in regard to arriving at some figures which would be agreeable to both parties, and there never had been a denial of liability by defendant.

On April 6, 1945, plaintiff gave Hull a written letter demanding payment for the loss of his barn or that defendant furnish plaintiff its forms for proofs of loss, which it required him to fill out and file to establish his loss. Instead of giving the requested forms to plaintiff, Hull typed and had plaintiff sign a letter which reads:

"I hereby ask you to appoint an appraiser and I will do the same they to appoint an umpire to adjust the loss of my barn.

And we are to both to abide by their decision.   Louis J. Fischer."

And Hull then gave plaintiff a letter reading :

"This is to inform you that we are willing to abide by the decision of the appraisers to be appointed to adjust the loss of your barn.   S. C. Hull, Secretary."

Plaintiff then appointed Howard Drake as his appraiser, and subsequently defendant appointed Charles McMillan as its appraiser.   These appraisers had one conference but did not appoint an umpire as directed by the appraisal agreement and insurance policy.   No appraisal was completed by the appraisers.   They were never discharged, and plaintiff never said he was not willing to have the appraisal go through, nor did defendant.   But as the result of Hull's persuading plaintiff on April 6, 1945, to consent to the appointment of an appraiser by each of the parties, and the appointments of appraisers, plaintiff was induced to delay preparing and filing his proof of loss and commencing his action within the year after the date ·of the fire.   On May 22, 1945, he again requested and then obtained from Hull defendant's forms for proof of loss, and plaintiff prepared and filed them with defendant on May 25, 1945, and it accepted and retained them without indicating that they would not be honored.

The acts and conduct of Hull throughout the continuing negotiations, as stated above, for over a year after the fire, and particularly Hull's course of conduct when, on April 6, 1945, upon plaintiff demanding defendant's forms for proof of loss, Hull, instead of giving such forms to plaintiff, persuaded him to join in the appointment of appraisers, and when Hull,— upon plaintiff again requesting, on May 22, 1945, the forms for proof of loss,—gave them to plaintiff and three days later accepted such proofs from plaintiff without objecting thereto, warranted finding that defendant by its course of conduct induced plaintiff to suspend proceedings and delay his action

until after the expiration of the twelve-month period after the fire, and that therefore the policy provision requiring suit to be brought within twelve months after the fire was waived by defendant as the jury found. As the court said in *Killips v. Putnam F. Ins. Co., supra* (in which there was an action to recover on a fire insurance policy which provided that no action for recovery shall be sustainable unless commenced within twelve months after loss occurred, and plaintiff claimed that due to acts and conduct of defendant he was delayed in filing proper proofs of loss and commencing the action until after the expiration of twelve months after the fire),—

"It does not seem to require much argument to demonstrate that if, by any act or omission of the responsible officers and agents of the defendant, the plaintiff should be induced to suspend action in the premises, for a given time, such time should not be deemed a part of the twelve months to which his right of action is limited by the original contract. To hold otherwise would be in many cases to allow a person to take advantage of his own wrong. . . . The idea that the remedy on the policy may be lost under such circumstances, is not to be entertained for a moment. The plainest principles of justice demand that the time thus lost by the plaintiff without any fault on his part, but through the fault of the defendant, should be added to the time within which they contracted in the first instance that the action should be commenced, and the plaintiff be not barred of his remedy on the policy until such additional time has expired. . . . But to return to the subject of waiver. We have seen that if, by any act or omission of the defendant, acting through its authorized agents the plaintiff was induced to suspend the making and furnishing of his proofs of loss for a given time, such act or omission operates as a waiver of the limitation clause in the policy to that extent, and the time thus lost is to be added to the twelve months prescribed by the policy, in determining the time within which the action thereon must be commenced." (pp. 482–485.)

To the same effect see *Friedberg v. Insurance Co. of North America,* 257 Mich. 291, 241 N. W. 183; *Voorheis v. People's Mut. Benefit Soc.* 91 Mich. 469, 51 N. W. 1109; *Lynchburg Cotton Mill Co. v. Travelers' Ins. Co.* (4th Cir.) 149 Fed.

954; *Steel v. Phenix Ins. Co.* (9th Cir.) 51 Fed. 715; *Thompson v. Phenix Ins. Co.* 136 U. S. 287, 10 Sup. Ct. 1019, 34 L. Ed. 408; *David v. Oakland Home Ins. Co.* 11 Wash. 181, 39 Pac. 443; *Allemania Fire Ins. Co. v. Peck,* 133 Ill. 220, 24 N. E. 538; *Prudential Fire Ins. Co. v. Trave-Taylor Co.* 194 Okla. 394, 152 Pac. (2d) 273.

Defendant contends the court erred in using the terms "prior to or after" and "may have been" (which are italicized) in the following portion of its instructions to the jury,—

"if you find . . . that after the fire, *prior to or after* said twelve months' period, there were negotiations for settlement, and that the only matter of dispute was the amount to be paid by the defendant, or" find "that Fischer and the insurance company had agreed to an appraisal a short time before the expiration of the twelve months' period, which appraisal has not been consummated, and which had not been consummated before the expiration of the twelve months' period after the fire, then you are instructed that the twelve months' period in which to bring suit *may have been* waived by the defendant."

Defendant claims the court erred in stating that the policy provision "may have been waived" without stating a correct rule as to when it would be waived. This claim might have been true if that had been the entire instruction given on the subject, and there had been no instruction given to the effect that, in order to find there was such a waiver there must be an additional finding to the effect that defendant by its conduct induced plaintiff to suspend proceedings or delay his action. However, "in determining the question whether prejudicial error was committed by the court in its instructions, the charge must be considered as a whole." *Karshian v. Milwaukee E. R. & L. Co.* 192 Wis. 269, 273, 212 N. W. 643. Therefore there must be taken into consideration, in connection with the instructions quoted above, the additional instructions which immediately followed, viz.,—

"You are further instructed that when the conduct and statements of those authorized to act for a fire insurance company is such that a reasonably prudent man would anticipate

that a claim would be paid, and that it would not be resisted under any condition of the policy, then the insurance company may be estopped from claiming the benefit thereof. . . . an estoppel arises where the insurance company, having knowledge of the facts to which it has a right to take exceptions, or which would constitute a defense against any claim under the policy, if it chose to avail itself of them, so bears itself thereafter, in relation to the contract, as fairly to lead the assured to believe that the insurance company still recognizes the policy to be in force and to constitute for him a valid protection."

In thus phrasing these instructions the court evidently adopted the terms used in *Frels v. Little Black F. M. Ins. Co.* 120 Wis. 590, 599, 98 N. W. 522, in stating,—

"These representations and conduct of its officers were well calculated to lead appellant, as a reasonable man, into the belief that it would not insist upon the condition of the policy which limited the time for bringing an action on the policy to twelve months after loss. To now permit the company to set up this limitation would give it an advantage over appellant which would be against equity and good conscience, and it should not be permitted to avail itself of such advantage."

The terms thus used in stating the rule in question were likewise applicable in the case at bar. And the meaning and effect of using those terms in the instructions given by the court was virtually the same as if the court had instructed that in order to find there was such waiver or estoppel, the jury must be convinced that defendant by its course of conduct induced plaintiff to suspend proceedings or delay his action.

Defendant also claims the court erred in using the words "prior to or after" (italicized) in the above-quoted portion of the instruction, because in view of the words "prior to" in this instruction the jury could have found that defendant waived the policy limitation if there had been negotiations on the first day after the fire, even though there had been no negotiations thereafter; and subsequently defendant claims in its brief that the court was in error in using the words "or after" (itali-

cized) in said instruction, because if defendant intended to waive its right to claim the action was barred unless commenced within twelve months after the fire, the acts or conduct constituting the waiver must have occurred before the expiration of that period. The question as to the effect, on an issue as to waiver, of negotiations before and after the expiration of the limitation period prescribed in a policy is discussed in 29 Am. Jur., Insurance, pp. 1048–1050, secs. 1402, 1403. As is there stated,—

"In general, to constitute a waiver by the company of a condition in the policy limiting the time in which suit shall be brought after loss, the act or declaration relied upon must be done or made during the running of the period of limitation, or at least begun during such period. There are many cases holding or assuming that the insurer, by conduct extending beyond the limitation period, inducing the insured to believe that his claim would be settled without suit, was precluded from invoking the contractual limitation against the insured."

See also the note in 3 A. L. R. 318, and the cases cited on pp. 222, 223, including *Lynchburg v. Cotton Mill Co. v. Travelers' Ins. Co., supra; Killips v. Putnam F. Ins. Co., supra; Allemania Fire Ins. Co. v. Peck, supra; Thompson v. Phenix Ins. Co., supra.*

Error is also assigned by defendant in relation to instructions in several other respects. Upon due consideration there does not seem to be any prejudicial error in those respects; and no useful purpose will be served by discussion thereof.

*By the Court.*—Judgment affirmed.

WICKHEM, J., dissents.