NELLIE A. McGURK, ADMINISTRATRIX, vs. THE METROPOLITAN LIFE INSURANCE COMPANY.

Hartford Dist., May T., 1888. PARK, C. J., CARPENTER, PARDEE, LOOMIS and BEARDSLEY, Js.

An application for life insurance, in reply to the question what the occupation of the applicant was, stated it to be that of a grocer. The applicant was in fact a grocer, but sold liquors in a room in his grocery. Held that the answer was not to be regarded as a false one.

The policy issued on the application contained the following:—" The person upon whose life this policy is issued shall not be connected in any way with the ale, wine or liquor business, unless so specified in the application or permission be given by permit signed by the president or secretary." Held that this provision had reference only to the business of the insured after the policy was issued, and that the fact that he was at the time in the liquor business did not prevent the policy taking effect.

The policy also contained the following provision:—" Agents are not authorized to make, alter or discharge contracts or waive forfeitures." Held that while an agent might not have power to waive a forfeiture, yet where knowledge of a ground of forfeiture came to an agent while in the discharge of his duties as agent, the knowledge of the agent was the knowledge of the company, and that the receipt of premiums after that time by the company became a waiver on its part of the forfeiture.

An agent whose business it is to procure applications for insurance, deliver policies and collect premiums within a certain territory, is an agent whose knowledge of a cause of forfeiture becomes the knowledge of the company.

An agent having general authority to act within a certain territory is none

the less a general agent because his authority is limited to such territory.

The policy delivered to the insured contained a provision that he should not be engaged in the ale, wine or liquor business, unless it was specified in the application or permission given by the company. The insured kept liquors for sale with no such specification or permission. The application was filled out by the company's agent in the room where the liquors were sold, he saw the selling of liquor going on, and drank some liquor himself, and afterwards delivered the policy to the insured in that room; another agent of the company who afterwards collected weekly premiums from the insured was present at the time and saw the sale of liquors going on; and two other agents who sometimes received the premiums knew that the insured sold liquors. Held that the continued receiving of premiums by the company was à waiver of the forfeiture.

It being the duty of an agent to inform his principal of facts affecting his interests that come to his knowledge, there is a presumption that such information was given.

[Argued May 16th—decided July 20th, 1888.]

ACTION on a policy of life insurance; brought to the Court of Common Pleas of the county of Hartford, and tried to the jury before *Bennett, J.* Verdict for the plaintiff, and appeal by the defendants for errors in the charge of the court.

*T. M. Maltbie* and *W. W. Pratt*, for the appellants.

1. The insured, being a grocer and retail liquor dealer, stated in answer to the question as to his occupation, that he was a grocer. The application was a part of the contract, and the policy, as the first condition to its validity, provided " that the person upon whose life this policy is issued shall not be connected in any capacity with the ale, wine or liquor business, unless so specified in the application, or unless permission be given by permit signed by the president or secretary." A statement that the insured was a grocer is clearly not to specify that he was engaged in the ale, wine or liquor business. It is evident that the business as conducted by the insured was not an incident to the grocery business, nor conducted as such, but was as independent as if carried on in a separate locality. Under the provisions of the contract the concealment of the fact that the insured was engaged in this business rendered the policy

void. The answer of the insured that he was a grocer, without mentioning his other business, was a false answer, and as much a violation of the terms of the contract and of the warranty as if he had stated that he was not in the liquor business. It has been well said that if a party has warranted the statements in an application to be true, and then conceals any fact about which inquiry is made, and does not answer fully in reference thereto, such concealment would be as much a fraud upon the insurance company, and avoid the policy as quickly, as though the insured made an intentional misstatement of the circumstances, and then certified that he had made a true statement. In *Phœnix Life Ins. Co.* v. *Raddin*, 120 U. S. R., 183, the distinction between an answer apparently complete, but in fact incomplete and therefore untrue, and an answer apparently incomplete, and accepted as such by the insurers, is fully discussed. The court there hold that if the answers are warranties, they are to be strictly and literally complied with, and that any such answer, apparently complete, but in fact incomplete, is a false answer and avoids the policy. See also *Towne* v. *Fitchburg Fire Ins. Co.*, 7 Allen, 51.

2. The court said to the jury that " the omission of Mc-Gurk to state in his application that he was engaged in the liquor business did not render the issue of the policy null and void," and further instructed them that the condition applies " only to such connection with such business after the date and delivery of the policy," and also that the condition " takes effect on the delivery of the policy and looks only to business of the insured subsequent to such delivery." These instructions were erroneous, and evidently based upon an entire misapprehension of the terms expressed in the first condition of the policy. That condition contemplates two states of facts: one is, that the applicant for insurance may be engaged in the liquor business when the application is made; and the other, that he may afterwards desire to engage in such business. In the first case he must state his business in the application, and in the second case he must obtain a permit therefor.. The judge failed to note this dis-

tinction. It is clear that the misrepresentation connected with the provisions of the first condition of the policy prevented the contract becoming operative. Not only by the fraud and collusion between the insured and the agents of the defendant, but also by the failure of the parties to meet understandingly upon the terms of the contract, was it rendered wholly inoperative.

3. If there was no contract between the parties there could be no forfeiture, and of course no waiver or estoppel on account of the forfeiture. If, however, the contract was valid, then its provisions as to the liquor business could only be waived by permit, signed by the president or secretary of the company. A company which has prescribed that the conditions of its policy shall only be waived by its written or printed assent, has prescribed only a reasonable rule to guard against the uncertainties of oral evidence, and by this the assured has consented to be bound. *Kyte* v. *Commercial Union Ass. Co.*, 144 Mass., 43; *Hale* v. *Mechanics' Mut. Fire Ins. Co.*, 6 Gray, 169; *Worcester Bank* v. *Hartford Fire Ins. Co.*, 11 Cush., 265. In this case the contract not only provided how a forfeiture might be avoided, and designated agents who might act in the matter, but it has also in the sixth condition provided that no other agents of the company can on behalf of the company waive forfeitures or alter contracts. It has never been held that any agent, other than one having general powers or express authority, could waive any of the provisions of a contract. An agent who is simply authorized to solicit applications for insurance, deliver policies and collect premiums, has no implied authority to waive any requirement of the policy or by his conduct prejudice in any manner the rights of the insurer. *Kyte* v. *Commercial Union Ass. Co.*, 144 Mass., 43; *Lohnes* v. *Ins. Co. of N. America*, 121 id., 439; *Eastern Railroad Co.* v. *Relief Ins. Co.*, 105 id., 570; *Harrison* v. *City Fire Ins. Co.*, 9 Allen, 231; *Tate* v. *Citizens' Ins. Co.*, 13 Gray, 79; *Shawmut Sugar Refining Co.* v. *People's Ins. Co.*, 12 id., 535. It has also been said that where there is an express limitation upon the authority of a general agent, and this is brought to the notice

of one dealing with him, the principal cannot be held liable for any act of the agent within the limitation. Where the authority of such an agent is limited by provisions of the policy, and so brought to the knowledge of the assured, he has no authority to waive the condition, or agree that it shall be waived. *Marvin* v. *Universal Life Ins. Co.*, 85 N. York, 278; *Walsh* v. *Hartford Fire Ins. Co.*, 73 id., 5.

4. But it is said that, although the agent had no power to waive forfeitures, yet if he collected premiums and remitted them to the defendant, having knowledge of the violation of the condition, then there was a presumption that the' knowledge of the agent was communicated to the defendant, and that retaining the premiums under such circumstances would be a waiver of the forfeiture. We think that the idea of constructive notice to the insurer, or presumption that the knowledge of the agent was communicated to the insurer, has been held only in cases of general agency, or where the agent had power to make and vary the contract. It is true that in the case of *Ins. Co.* v. *Wolff*, 95 U. S. R., 332, Justice FIELD says : " Where an agent is charged with the collection of premiums upon policies, it will be presumed that he informs the company of any circumstances affecting its liability; and if subsequently the premiums are received without objection, any forfeiture incurred will be presumed to be waived." But he also said in the same case, that " the difficulty in this case, and in nearly all cases where waiver is alleged, in absence of written proof of the fact, arises from a consideration of the effect to be given to the acts of the agent of the company in dealing with the assured. Of course such agents, if they bind the company, must have authority to waive a compliance with the conditions upon a breach of which a forfeiture is claimed, or to waive the forfeiture when incurred, or their acts waiving such compliance or forfeiture must be subsequently approved by the company." In this case neither of the agents collecting premiums, or having to do with soliciting or delivering the contract, was a general agent, or had any power to modify the contract or waive forfeitures, and the limitations upon

their power were stated in the contract and known by the insured. In *North Berwick* Co. v. *New England Ins. Co.*, 52 Maine, 336, the agent had a general power of attorney, not only to make insurances and renew the same, but to vary the risk ; and all policies made by him were to be valid and binding. See also *Miner* v. *Phœnix Ins. Co.*, 27 Wis., 693 ; *Bevin* v. *Conn. Mut. Life Ins. Co.*, 23 Conn., 244 ; *Ryan* v. *World Mut. Life Ins Co.*, 41 id., 168. The agent who took the application knew the terms and conditions of the policy, and of course knew that the insured was bound to give answers not only strictly correct and wholly true, but also, being engaged in a prohibited business, that if that business was not mentioned in the application or communicated to the insurer the policy would be invalid. In taking such an application containing a false answer, and procuring and delivering the policy and collecting premiums, he was acting as the agent of the insured and not the insurer. If under any circumstances the knowledge of an agent of facts which forfeited the policy, could be constructive notice to the company of such facts, such would not be the case where the agent was in collusion with the insured, fraudulently concealing these facts from his principal, and had accepted from the insured and delivered to his principal a false statement of them. Actual knowledge by an agent of a violation of a condition of a policy on the part of the insured, must be unmistakably shown before any waiver or estoppel can be predicated upon his action. The terms of the contract clearly imply that the insured might have a valid policy even if engaged in the prohibited business. The agent, who was simply collecting premiums, could not investigate as to the truth of the statements contained in the application, and it was not his duty to inquire whether the insured had obtained a permit for such business. The entire difficulty in the plaintiff's case is found in the original falsehood in the application, to which the first agent who collected premiums consented, and of which the other agents who collected premiums of the insured were entirely ignorant. Upon the facts, then, there was nothing in the case

tending to prove knowledge of the defendant that the first condition of the policy was violated.

*L. Sperry*, for the appellee.

PARK, C. J. This action is based upon a policy of life insurance, issued by the defendants upon the life of one William McGurk.

At the time application was made for the policy, and when it was issued, and during all the remaining life of Mc-Gurk, he was carrying on the business of a grocer, and at the same time was engaged in selling wines and spirituous liquors at retail in one part of his grocery establishment, separated from the remainder by a wooden partition. In his application for the policy he stated, in answer to a question regarding his business, that his "occupation was that of a grocer." No other or fuller answer was given to the question.

He further declared that the statements he had made in his application were "strictly correct and wholly true; and that they might form the basis and become a part of the contract of insurance, if one should be issued." The policy counted upon these statements, and they formed a part of the consideration of the contract.

In one clause of the policy it is stated that "the person upon whose life this policy is issued, shall not be connected in any capacity with the ale, wine or liquor business, unless so specified in the application heretofore referred to, or unless permission be given by permit, signed by the president or secretary." In another clause of the policy it is stated that "agents are not authorized to make, alter or discharge contracts, or waive forfeitures, or receive premiums on policies in arrears after the time allowed by the regulations of the company."

On the trial of the cause in the court below the plaintiff offered evidence to prove, and claimed that he had proved, that the application of McGurk was taken and filled out by one Curtis, who was the assistant superintendent of the de-

fendants in the district where the insured resided; that it was taken in the room where the insured kept his liquors; that while it was being done the insured sold liquors to divers persons in the presence and with the knowledge of Curtis, who likewise drank liquor there at the time; that another agent of the defendants, who performed the duty of collecting premiums of insured persons, and who afterwards collected weekly premiums of McGurk during nine successive weeks next after the issuing of the policy, was also present at the taking of the application and saw McGurk selling liquors; that two other agents of the defendants, who collected premiums of the insured, knew that he was engaged in the business of selling groceries and spirituous liquors, and one of them drank such liquor there, but they knew nothing concerning the statements in the application; and that Curtis delivered the policy to the insured in the same room where the liquors were sold, which had all the ordinary accompaniments of a bar-room.

It further appeared in the case by the evidence offered by the defendants, that the duties of superintendents of districts and assistant superintendents, were to employ and instruct agents in their duties of canvassing for applications for insurance and in the collection of premiums, and to inspect their business and examine their accounts of premiums collected.

These facts form the basis of the questions that arise in the case.

The defendants' answer sets forth a false warranty of McGurk in his application, in this, that he stated in it that his occupation was that of a grocer, which was not strictly and wholly true, for at the same time he was engaged in the ale, wine and liquor business as a part of his occupation, which he continued to carry on during the remainder of his life, without the business being stated in his application and without having the permit to do so signed by the president or secretary of the defendants; which was contrary to his warranty and to his contract of insurance.

The plaintiff's reply to the answer of the defendants sets

forth that the defendants well knew, when the application was made and the policy was delivered, and during all the subsequent life of McGurk, that he was engaged in such business, but notwithstanding they collected, and continued to collect of him the weekly premiums as long as he lived, and in consequence thereof they waived all objection to the liquor business of McGurk, and are now estopped from claiming the objection set forth in their answer. To this reply the defendants demurred, and the court adjudged the reply sufficient, and required the defendants to plead over, which they did by denying the facts stated in the reply to which they had demurred.

On the trial of the cause evidence was offered by the parties *pro* and *con* on this issue, and under the charge of the court the jury found the facts as stated by the plaintiff.

The question of fact, therefore, has been settled, and cannot be reviewed, if there was any substantial evidence that went to the jury in support of their verdict, inasmuch as the case is not brought up on the ground of a verdict against the evidence.

But the defendants complain of the charge of the court. They say the court erred in not charging the jury according to their request, which was as follows:—(1.) " That the answer in the application that McGurk was a grocer, without stating that he was engaged in the liquor business, was an incomplete and false answer, and constituted a breach of warranty, and that the contract of insurance was thereby rendered void. (2.) That by reason of the false answer and warranty, the contract never became operative and binding, but was void from its inception. (3.) That under the conditions of the contract of insurance, McGurk being engaged in the ale, wine, and liquor business, the contract never took effect, but was invalid and void."

Upon this subject the court charged the jury as follows:— " The court instructs the jury that the omission of McGurk to state in his application that he was engaged in or connected with the ale, wine or liquor business, does not render thereby the issue of the policy of insurance null and void

by reason of the first condition of the policy. The provisions of this condition, which are that the person upon whose life the policy is issued shall not be connected in any capacity with the ale, wine or liquor business, unless so specified in the application or unless permission be given by permit signed by the president or secretary, apply only to such connection with such business after the date and delivery of the policy. It is a condition which takes effect on the delivery of the policy, and looks only to the business of the insured subsequent to such delivery. The question of fact then is, was McGurk connected in any capacity with the ale, wine or liquor business after the delivery of the policy?"

The defendants' request to charge is, in substance, that the omission of McGurk to state in his application that his occupation in part was the business of selling ale, wine and liquors, constituted a breach of his warranty that his answers should be strictly correct and wholly true, and therefore rendered the contract of insurance which was afterwards given void in its inception.

It does not appear that McGurk was informed at all as to what would appear in his contract of insurance, if one should be issued. It was in the contract alone, afterward delivered, that he obtained the information that he should not " be connected in any capacity with the ale, wine or liquor business, unless so specified in his application for the insurance, or unless permission was given by permit, signed by the president or secretary." Webster defines the meaning of the word " grocer " to be—" A trader, who deals in tea, sugar, spices, coffee, liquors, fruits," etc. The word therefore properly described McGurk's occupation, and nothing whatever appears in the case tending to show any want of sincerity on his part in his answer, much less that by it he committed a fraud on the defendants which made void the contract of insurance in its inception. He doubtless believed at that time that the word "grocer" covered his entire occupation. The answer was made in the bar-room of McGurk, in the midst of his liquors, and in

the presence of two of the defendants' agents—a poor time and place, at least, to practise such a fraud on the defendants.

It is true that, after McGurk knew what the contract required, he should have conformed to it or rejected it altogether; but to say that the contract was void in its inception, before he knew or had any opportunity to know what it required, was incorrect, and would have been error in the court if it had so charged. The view that the court took of the contract in this respect was strictly correct. It had nothing whatever to do with the occupation of McGurk before it took effect on its delivery.

The defendants further claim that the evidence offered by the plaintiff on the trial, tending to show a waiver by the defendants of the want of a permit to McGurk to engage in the ale, wine and liquor business, signed by the president or secretary of the company, should have been excluded, on the objection made by them, that, the power of the agent who took the application, delivered the policy and collected premiums, being limited, with full knowledge of the insured, to those specific duties, and notice being given in the policy that such agent could not alter the contract or waive forfeitures, it follows that anything done or said by any such agent would not be a waiver of any condition or in any manner affect the rights of the defendants under this contract.

The evidence was offered to show that the defendants themselves had full knowledge that McGurk was engaged in the ale, wine and liquor business, and that with such knowledge they voluntarily accepted premiums, and thereby waived all objection to the omission to state such business in the application, and to the want of a permit signed by the president or secretary of the company allowing McGurk to pursue such business ; and for this purpose the evidence was clearly properly receivable.

The presumption was a very strong one that the assistant superintendent of the district, who took and filled out the application of McGurk, and who afterwards delivered to

him the policy and collected the premium thereon, whose duty it was to see that all the agents of the defendants soliciting applications for insurance and collecting premiums of the insured within his district performed their duty, informed the defendants of all the facts respecting the occupation of McGurk, so recently within his knowledge, and which it was his bounden duty to do when he took to them McGurk's application for insurance. He would have been recreant to his manifest duty had he failed so to inform them.

Had the duties of the assistant superintendent been co-extensive with the business of the defendants, although his authority would not have been greater over any particular district than it was over the one in question, still he might be regarded as the general agent of the company in that department of their business. All the business of the defendants in procuring applications for insurance, delivering policies and collecting premiums, was committed to this class of agents. If one, having the entire management, might properly be called a general agent, it is difficult to see why one having the same management over certain territory might not in like manner be properly so called.

It is everywhere held that information which comes to an agent concerning the business he is transacting for his principal within the limits of his agency, is information to the principal. In the case of *The Distilled Spirits*, 11 Wallace, 356, the United States Supreme Court say:—" The question how far a purchaser is affected with notice of prior liens, trusts, or frauds, by the knowledge of his agent who effects the purchase, is one that has been much mooted in England and this country. That he is bound and affected by such knowledge or notice as his agent obtains in negotiating the particular transaction, is everywhere conceded. . . . The general rule that a principal is bound by the knowledge of his agent is based on the principle of law that it is the agent's duty to communicate to his principal the knowledge he has respecting the subject matter of negotiation and the presumption that he will perform that duty." May (on

Insurance, 2d ed., § 132), says :—" Facts material to the risk, made known to the agent before the policy is issued, are constructively known to the company, and cannot be set up to defeat a recovery on the policy." See also *Commercial Ins. Co.* v. *Spankneble*, 52 Ill., 53; *Reaper Ins. Co.* v. *Jones*, 62 Ill., 458; *Lycoming Ins. Co.* v. *Barringer*, 73 Ill., 230. In *Bartcher* v. *Hawkeye Ins. Co.*, 47 Iowa, 253, the court say :—" We are, in the next place, required to determine whether the defendant is bound by the knowledge possessed by its agent as to the fact that the building was not occupied. The district court instructed the jury that if the agent was authorized to solicit and forward applications for insurance, to deliver policies and to collect and transmit premiums, the defendant was bound by the knowledge possessed by him touching the character of the risk and the fact that it was not occupied as a hotel. The jury must have found that the powers and authority of the agent were such as are specified in this instruction; and the evidence supports such conclusion. This rule of instruction has been recognized by this court." In *Globe Mut. Ins. Co.* v. *Wolff*, 95 U. S. R., 326, the court say : " It is true that where an agent is charged with the collection of premiums upon policies, it will be presumed that he informs the company of any circumstances coming to his knowledge affecting its liability, and if subsequently the premiums are received by the company without objection, any forfeiture incurred will be presumed to be waived."

These cases, and many others that might be cited, fully establish the doctrine that knowledge affecting the rights of the insured, which comes to an agent of an insurance company while he is performing the duties of his agency in procuring applications for insurance and delivering policies and collecting premiums, becomes the knowledge of the company, and if the latter afterwards collects premiums of such parties it waives all objection with regard to the matters of which it has such knowledge.

There is no error in the judgment complained of.

In this opinion the other judges concurred.