The Marshall Farmers' Home Fire Insurance Company *v.* Liggett.

---

THE MARSHALL FARMERS' HOME FIRE INSURANCE COMPANY *v.* LIGGETT.

[No. 1,999.    Filed January 26, 1897.]

INSURANCE.—*Forfeiture.—Waiver of by Accepting Delinquent Assessments After Loss.—Mutual Insurance Company.*—Where a director of a mutual insurance company, who was acting as collector, called upon assured the next morning after a fire and collected two delinquent assessments on a policy of insurance covering such loss, having knowledge of such loss, and the company retained the money so collected, a forfeiture of such policy on account of such delinquency is thereby waived.

From the Marshall Circuit Court.    *Affirmed.*

*Charles Kellison,* for appellant.

*Samuel Parker,* for appellee.

COMSTOCK, C. J.—This was an action commenced by the appellee on a certificate of membership and policy of insurance held by him on his dwelling house and contents in a farmers' mutual insurance company, organized under the laws of this State, in Marshall county, and doing business in said county under the name of "The Marshall Farmers' Home Fire Insurance Company," to recover damages for their destruction by fire.

At the time of the loss appellee was delinquent, having failed to pay two assessments made against him for the purpose of paying the losses of other members of the company. The company refused to pay the loss on the ground of such delinquency, and it was claimed by appellee that the company had waived the right to insist upon the condition of the policy, for the reason that the company had collected two assessments from the insured after his loss, with full knowledge, and retained the same.

The appellant contended that under the provisions of the policy issued by it, and under the facts connected with the collection of the assessments, there was no waiver of the condition of the policy. The cause was tried by a jury and a verdict returned, and a judgment rendered for $822.00 in favor of appellee.

The errors assigned challenge the correctness of the rulings of the court upon the demurrers to complaint and reply, in overruling appellant's motion for a new trial, in overruling appellant's motion for judgment, and in overruling appellant's motion in arrest of judgment.

Exceptions were taken to the rulings of the court in making up issues, to the giving and the failure to give instructions, and to the ruling of the court upon the admission and exclusion of testimony.

The controlling question of the case is whether the appellant waived the forfeiture of the policy in suit by accepting the payment of two delinquent assessments from the plaintiff after the loss had occurred, to recover which this suit was brought.

The facts set out in the pleadings and proven by the evidence, essential to the decision of the case, are, that on the 9th day of December, 1892, the appellant, being a farmers' mutual insurance company, and doing business under the laws of the State, issued its cer-

tain certificate of membership and policy of insurance to the appellee, on his dwelling house, valued at $500, and its contents, valued at $300.00; insuring them from loss by fire for the term of five years from said December, 1892; that appellee paid appellant $2.50, and entered into an agreement to pay his just and equal proportion of any loss sustained by any member of said company, according to the rules and laws of the appellant; that in March, 1895, the dwelling house and contents were entirely destroyed by fire, through no fault of appellee; that, prior to and at the time of said loss, appellee was delinquent upon two assessments due other members of the company for loss sustained by them; that, although he was notified of such assessments, he had failed and refused to pay them; that on the morning after the fire, which occurred on the 15th day of March, 1895, a director of the company, who was acting as collector for the company, with knowledge of the appellee's loss, collected from him the two delinquent assessments, and subsequently paid them to the treasurer of the company, with other delinquent assessments which he had collected from other members of the company; that, immediately after the fire, appellee notified the company in writing, of the same, and on the 25th of March, 1895, the company informed him in writing, that his claim for loss would not be paid, for the reason that he had forfeited his policy because of said delinquency.

The company retained the assessments paid by appellee.

Upon the facts stated, if the appellant should be held to have waived its right to insist upon the forfeiture of the policy, the appeal is not well taken.

The certificate of membership, agreement, constitution and by-laws of the company are all set out in the pleadings.

Section 4 of the constitution reads as follows: "The officers of the company shall be a president, secretary, treasurer, and one director in each township in which the company insures."

Section 5. "The officers of the company are to constitute a board for the transaction of all the official business of the company, a majority of whom shall constitute a quorum for the transaction of any business of the board."

Section 27. "Any person insuring in this company is to be considered a member thereof."

Section 33. "Any member wishing to withdraw from the company, or have his insurance canceled, must give notice thereof to the secretary who shall note thereon the precise time of receiving it, also on back of entries."

Section 34. "No member can withdraw from this company without first paying all assessments levied or liable to be assessed against him up to the time of his notice to the secretary."

Section 11 of the by-laws. "Any person failing to pay his distributive share of any assessment shall forfeit his insurance during such delinquency."

Section 37 of the constitution. "The treasurer, upon receiving such assessment from the secretary, shall immediately proceed to collect the same by demand, or by suit, if necessary, and pay over to the member sustaining such loss the amount thereof, within one month after receiving such assessment, and take his receipt therefor."

Appellant contends that under the provisions of the policy issued, and the facts connected with the collection of the assessments, there was no waiver of the conditions of the policy; that appellee's loss did not occur during any period of the term of the policy for which he paid.

Appellee contends that the facts show the intention of the company to waive the forfeiture; that the acceptance of appellee's money with knowledge of his loss is waiver. In support of the proposition of waiver appellee cites the *Phenix Ins. Co.* v. *Tomlinson*, 125 Ind. 84, 9 L. R. A. 317, to the effect that forfeitures are not favored in law, and that courts will put such a construction on the conduct of parties as will produce a waiver thereof, if possible; that the right to declare a forfeiture for the failure to perform a condition therein may be waived, and the waiver manifested as well by conduct as by words, citing also, *Germania Ins. Co.* v. *Hick*, 125 Ill. 361, 17 N. E. 792.

Appellant contends that this case is not in point for the reason, among others, that it was a stock company, while the appellant is a mutual company.

In Richards on Insurance, p. 80, the author says: "The tendency among the courts seems to be to deny the distinction between mutual and stock companies altogether, in respect to the power of the officers and agents to waive conditions and estop the company from insisting on forfeitures; for, as a matter of fact, the applicant for insurance rarely knows anything about the charter or by-laws, and could hardly be expected to be acquainted with them at the time of making his application. Universally it is held that the acceptance of an assessment or premium by the home office is a waiver by the company of all former grounds of forfeiture known by it."

In *Queen Ins. Co.* v. *Young*, 86 Ala. 424, 5 South. 116, it is said "on breach of the condition and forfeiture of insurance, the defendant had the election to avoid the policy, or waive its right to claim its forfeiture. Conditions in a policy of insurance, limiting or avoiding liability, are strictly construed against the insurer, and liberally in favor of the assured. Though

a waiver may be in the nature of an estoppel, and maintained on similar principles, they are not convertible terms. The courts, not favoring forfeitures, are usually inclined to take hold of any circumstances which indicate an election to waive a forfeiture. A waiver may be created by acts, conduct, or declarations, insufficient to create a technical estoppel. If the company, after knowledge of the breach, enters into negotiations or transactions with the assured, which recognize and treat the policy as still in force, or induces the assured to incur trouble or expense, it will be regarded as having waived the right to claim the forfeiture." To the same effect is *Titus* v. *Glens Falls Ins. Co.*, 81 N. Y. 410.

In *McGurk* v. *Metropolitan Life Ins. Co.*, 56 Conn. 528, 16 Atl. 263, the court, after citing a number of cases, quotes from the *Insurance Co.* v. *Wolff*, 95 U. S. 326, as follows: "It is true, that, where an agent is charged with the collection of premiums upon policies, it will be presumed that he informs the company of any circumstances coming to his knowledge affecting its liability; and, if subsequently, the premiums are received by the company without objection, any forfeiture incurred will be presumed to be waived;" and adds: "These cases, and many others that might be cited, fully establish the doctrine that knowledge affecting the rights of the insured, which comes to an agent of an insurance company while he is performing the duties of his agency in procuring applications for insurance and delivering policies and collecting premiums, becomes the knowledge of the company, and if the latter afterwards collects premiums of such parties it waives all objection with regard to the matters of which it has such knowledge."

In *Phœnix Life Ins. Co.* v. *Raddin*, 120 U. S. 183,

7 Sup. Ct. 500, the court says: "If insurers accept payment of a premium after they know that there has been a breach of the condition of the policy, their acceptance of the premium is a waiver of the right to avoid the policy for that breach." *Vide*, also, the authorities therein cited.

When the director called upon the appellee to collect the delinquent assessments, he looked at the ruins of the house and said: "I suppose you know what is lacking." Nothing was said about a forfeiture, but the assessments were then paid, and the appellee instructed that he should notify the company in writing.

For months before the fire the company knew of the delinquency. Notices had been given in November previous, and in placing these assessments, with others, in the hands of one of the directors for collection, nothing was said about forfeiture. The instructions were to leave them with a justice of the peace for collection if the agent himself failed to collect them.

In *Farmers' Ins. Co.* v. *Bowen*, 40 Mich. 147, the opinion was given by Cooley, C. J., and is as follows: "The defendant in error in 1865 effected with the plaintiffs in error an insurance upon his house and household furniture, subject to the payment of such assessments as should be made by the company from year to year to meet losses suffered and expenses incurred. In February, 1875, the house and furniture were destroyed by fire. At that time there were two unpaid assessments of which defendant in error had been notified. One of the by-laws of the company provided that where the assessments were thus overdue and unpaid, the assured should forfeit all claims against the company for any loss or damage sustained during the delinquency. Immediately after the fire Bowen paid up the assessments to the local agent of the insurance company, who received the amount with

knowledge of the loss, but forwarded the money to the company without mentioning the fire of which the officers at that time had received no notice from any other quarter. March 16th, 1875, the board of directors of the insurance company adopted a resolution 'that the secretary and chairman of the board of directors be instructed to draw an order on the treasurer in favor of William Bowen for the amount of Bowen's loss, on the recommendation of the auditing board, when said loss is adjusted.' * * * Yet on the 2d of April following the board passed another resolution that they did not consider the company liable on account of the non-payment of the assessments. An adjustment of the loss was therefore refused. The circuit judge was quite right in holding the company bound by its reception of the assessments and recognition of the loss."

The similarity of this case and the one at bar justifies this lengthy quotation. The forfeiture clause in each policy is practically the same; the same reason is given in both for refusing to pay loss; the assessments in each case were for earned premiums.

When the appellee paid the assessments he was no longer delinquent, he owed the company nothing.

In assessment companies there is no advance payment of premiums, the forfeiture claim is for the benefit of the company. It may waive it. If the company accepts and retains the amount of the assessments after default, the reciprocal rights of the parties stand unimpaired.

This condition is entirely within the control of the company. It may declare a forfeiture of the policy and then cut off the delinquent members from all benefits, or it may collect delinquent assessments waiving forfeiture.

There is no evidence that appellee intended to with-

draw from the company; he made no attempt to do so. There is no evidence that the company intended to forfeit his policy. It is quite clear that appellee and the director of appellant, at the time payment was made of the delinquent assessment, believed that appellee was entitled to payment for loss. Directions as to the manner of giving notice to the company of the loss would, in any other view, have been meaningless. The evening before the fire the director who collected the assessments was informed that appellee wished to pay them, and the morning after the fire he said to the appellee, in the presence of the ruins, "I guess you know what is lacking," and appellee answered, "I do. Have you got any blanks?" The blank receipt was produced and filled up; the money was paid, and receipt given, signed by the treasurer of the company, whose name the director had authority to sign. These facts are pertinent on the subject of intention of the parties, and were proper to go to the jury determining the question of waiver.

From a careful examination of the record we conclude that the merits of the case have been fairly tried, and that it contains no error for which the judgment of the court below should be reversed.

Judgment affirmed.

BLACK, J., absent.