IN THE

# APPELLATE COURT

OF THE

## STATE OF INDIANA,

AT INDIANAPOLIS, NOVEMBER TERM, 1904, AND MAY TERM, 1905, IN THE EIGHTY-NINTH YEAR OF THE STATE.

---

FARMERS MUTUAL FIRE INSURANCE COMPANY OF DEKALB COUNTY *v.* JACKMAN.

[No. 4,991. Filed March 8, 1905.]

1. INSURANCE.—*Mutual.*—*Corporate Powers.*—*Notice.*—Where the statute creating a mutual fire insurance corporation prescribes the mode of doing an act, such statute becomes a part of a contract for the doing of such act, and a member of such corporation contracting therewith is bound to know thereof. p. 11.

2. SAME.—*Articles of Incorporation.*—*Purposes Outside of Statute.*— The courts will compel corporations to observe their charter purposes, but nothing more, and if the articles of association of such corporations contain more provisions and regulations than required by statute, such additional provisions and regulations are void, and will be treated as by-laws only. p. 11.

3. SAME.—*Under What Act Doing Business.*—Where a mutual fire company, which provided protection from fire, was organized under the act of 1877 (Acts 1877, p. 53), and in 1881 an act was passed (Acts 1881, p. 714) allowing such companies to protect their members against fire and lightning, such company by amending its articles, and rules and regulations so as to protect against fire and lightning must be held to be operating under the act of 1881. p. 12.

4. SAME.—*By-Laws.*—*Notice.*—A mutual fire company has the right to make by-laws, and of these its members must take notice. p. 13.

5. SAME.—*By-Laws.*—*Rules and Regulations.*—*Waiver.*—A mutual fire company may waive the provisions in its rules and by-laws, and continue in force a policy in conflict with such provisions and by-laws. p. 14.

6. PLEADING. — *Insurance.* — *Ownership.* — *Knowledge.* — *Election.*— Where a mutual fire company receives and retains premiums on a

# 2 APPELLATE COURT OF INDIANA,

policy after knowledge that the owner has conveyed the fee-simple estate, reserving a life estate only in the real estate on which the insured property was located, it thereby elects to treat such policy as valid, though the policy provides it shall be void, and a complaint showing such facts is good on demurrer. p. 14.

7. INSURANCE.—*Mutual.—Member.—Waiver.*—The fact that plaintiff is a member of the defendant mutual fire company is no reason for treating the contract of insurance, as respects the prevention of a forfeiture, as different from a contract issued by a stock company. p. 14.

8. PRINCIPAL AND AGENT.—*Notice to Agent.*—Where an agent has authority to collect premiums on policies of insurance, notice to such agent of a change of ownership is notice to the company. p. 15.

9. INSURANCE. — *Forfeiture.* — All provisions for a forfeiture are strictly construed against the company, and forfeitures will be prevented when possible without making a new contract. p. 17.

10. · SAME.—*Forfeiture.—Waiver.*—Very slight circumstances will be seized upon by the courts to prevent a forfeiture of insurance where the condition is in favor of the company. p. 17.

11. SAME.—*Breach of Policy.—Receipt and Retention of Premiums.*— Where defendant company knows of a breach of a condition in plaintiff's policy but receives and retains premiums thereafter, such company is estopped to set up such breach in defense. p. 18.

12. PLEADING.—*Answer.—Demurrer.*—Sustaining a demurrer to a paragraph of answer is harmless error where the facts therein pleaded may be proved under another paragraph. p. 18.

13. TRIAL.—*Instruction.—Insurance.*—An instruction, that if the jury should find that defendant received and retained premiums on plaintiff's fire policy with knowledge of the breach of a condition there was an election by defendant to treat the contract as valid, is proper. p. 18.

14. TRIAL.—*Judgment Non Obstante.*—Where the general verdict is for plaintiff a judgment *non obstante* should not be rendered except where the answers to the interrogations are in irreconcilable conflict with such general verdict on material points which can not be avoided by reasonable intendment or inference. p. 19.

From DeKalb Circuit Court; *W. M. Brown,* Special Judge.

Action by Sarah Jackman against the Farmers Mutual Fire Insurance Company of DeKalb County. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*P. V. Hoffman* and *C. S. Smith,* for appellant.

*F. M. Powers* and *Cyrus Cline,* for appellee.

MYERS, J.—This was an action instituted in the DeKalb Circuit Court on the 29th day of July, 1902, to coerce payment of $400 on account of a policy of fire insurance issued by appellant to appellee on a certain dwelling-house situated on certain real estate in DeKalb county, Indiana, appellee owning only a life estate therein. The dwelling was totally destroyed by fire March 22, 1902.

The complaint was in three paragraphs. The first paragraph was dismissed. Briefly stated, the second paragraph avers that appellant is a corporation duly organized under the laws of the State of Indiana, with its principal office in DeKalb county, Indiana; that on April 3, 1880, appellee was the owner of sixty acres of real estate in said county, with a dwelling-house thereon occupied by her as a dwelling; that on said date appellant, under the name of the Farmers Mutual Fire Insurance Company of DeKalb County, Indiana, insured the appellee against loss or damage by fire or lightning to the following property, to wit: Dwelling on said land, $600; and specifically naming certain amounts of insurance on other specified property; that appellee paid a fee of $1 and a per cent. of $2, and received from appellant a policy—No. 192—signed by its president and secretary; that, by the terms of the policy and articles of association of appellant, appellee, by due observance of the by-laws, became a continuing member of said corporation; that on August 10, 1899, appellee sold said land to one Cyrus B. Jackman for the nominal sum of $2,000, and the further consideration reserved to appellee and her husband of a life estate in said lands, with the exclusive possession of same and buildings thereon, and the profits thereof; that upon the sale of said land she immediately informed the secretary of appellant that she had sold the land and under what terms and conditions, and sought his advice as to the necessity of having the policy assigned to her grantee; that she desired to make any necessary change in the policy to keep it in "full force and validity;" that said

secretary "informed her that no assignment of the policy was necessary, and that no change of any nature was necessary to maintain the policy; that, under her life interest in the lands, she had a right to take out a policy on the buildings and on the contents, and the exclusive use of the buildings and the ownership of the contents, and that if there was any loss, if she was a member in good standing by having paid all assessments to the company, the loss would be paid to her;" "that she relied upon the statement of the secretary so made to her, and returned home without making any change, and continued to pay all assessments made against her by said" appellant; that on August 23, 1900, appellant came to her home and readjusted her insurance, and issued a new policy, No. 1,496; "that she was occupying said property at that time under said life tenancy, and living in the dwelling on said land, the same being the dwelling insured by" appellant; that, under the new policy, $400 was placed on the dwelling, and the policy duly signed by the president and secretary of appellant; that at the time of the readjustment of said insurance and the issuing of the new policy, she informed the appellant as to her rights in the land, and that it was her desire to have the policy so issued that it would be maintained in full force and effect; that she was the owner of the personal property, and held a life estate in the land, with the exclusive possession thereof; that she was again informed by the company that it was only necessary for her to keep up her assessments, and that if a loss occurred the insurance would be paid to her; that she relied upon the statements made by appellant, accepted the policy in her own name, has ever since promptly paid all assessments made against her by appellant, which assessments were received and accepted by appellant; that she has fully performed all of the conditions on her part to be performed under the terms and conditions of said policy of insurance and the by-laws of said appellant; that on March 22, 1902, said dwelling was de-

stroyed by fire, without any fault or negligence on her part; that she was occupying said property as a dwelling at the time of its destruction; that, within ten days after the destruction of said dwelling, proofs of loss were duly made; that since the 3d day of April, 1880, until its destruction, appellee has continuously had the exclusive possession of said dwelling and occupied it as such, and that the insurance on said dwelling is due and unpaid. Judgment for $500 is demanded.

A copy of policy No. 192 is made an exhibit with this paragraph, and a copy of policy No. 1,496 is also made an exhibit. That part of the policy upon which this action is based, necessary for the decision of this case, is as follows: "By this policy of insurance be it known that Sarah Jackman, resident of DeKalb county, State of Indiana, has this —— day of continued membership become a member of the Farmers Mutual Fire Insurance Company of DeKalb County, according to the rules and regulations and articles of association; and is insured in said company against loss or damage from fire or lightning on the following described property, situated in Franklin township. Dwelling-house No. 1, addition A [particularly describing the material in the foundation, building, roof, size of building, height, year built, etc.], $400." Other classes of property with insurance thereon are mentioned and described in the policy. On the back of the policy is found the following: "Articles of association and rules and regulations of the Farmers Mutual Fire Insurance Company of DeKalb County, Indiana. We, the farmers and citizens of DeKalb county, State of Indiana, feeling the need of a reliable home insurance association and believing that such an association may be formed among the farmers and citizens of said State and county with a less rate of insurance than they are now having, and whereas, we believe a mutual association is the true method for farmers and citizens to adopt in insurance, therefore, we, the undersigned citizens

of said county, do hereby agree to associate together for the purpose of insuring our property, by virtue of section one of an act of the legislature of this State, approved March 14, 1877. An act for the association of farmers and citizens for the purpose of insuring their property against loss by fire under such rules and regulations as they may adopt therefor, to all whom it may concern: Be it known that we, Perry Fitch, William Cornell and others undersigned, residents of the county of DeKalb, State of Indiana, and citizens of said State, now, in pursuance of an act of the legislature of said State entitled: 'An act to enable farmers and citizens of any county in the State of Indiana to form voluntary associations for the purpose of insuring their property, against loss by fire,' approved March 14, 1877, do hereby associate together and form an association for the purpose of making insurance against loss by fire and lightning, on personal property, dwelling-houses, barns and other buildings, except those hereinafter mentioned. And we declare this instrument to be the rules and regulations of the association, by which it shall be governed in all respects, subject to the Constitution and laws of this State. The members of this company shall be all those who sign these articles and all of those who may hereafter hold a policy in force in this company. Rules and Regulations. Section 1. This association shall be known as The Farmers Mutual Fire Insurance Company of DeKalb County, post-office address, Auburn, Indiana."

Next follow sections providing the duties of the various officers, the manner of electing directors, the terms of directors and duties of agents, etc. Section nineteen provides that "No other form of application shall be used but the ones prescribed by the board, said application form shall set forth by schedule the property to be insured, its construction, size, year built, location, amount of insurance, and its present cash value, together with the articles, rules and regulations of said association. Said application shall make part of the

contract for insurance, and the same shall be considered a warranty of the truth of all the facts stated therein and shall be placed on file in the office of the secretary."

Section twenty-eight provides that "Any person before becoming a member of the association shall pay to the soliciting agent $1 policy fee, together with ten cents on each $100 insured. He must also subscribe his name to a copy of the articles of this association, and comply with and observe the by-laws, rules and regulations of this association. No other form of application shall be used but the one prescribed by the board. It shall set forth, by schedule, the property to be insured, its locality, and postoffice of owner, and shall contain the rules and regulations of the association. It shall make part of the contract of the insurance and be considered a warranty of the truth of all the facts stated therein. Provided, that any policy issued on such application to any person or persons, who do not own the same in fee simple shall be null and void. And this association shall not be held responsible for any loss or damage thereto."

Section thirty-seven provides that "The insurance of any member shall cease on the sale of his or her property, but he or she shall be holden for all assessments until his or her policy is legally withdrawn."

Section forty-six is as follows: "These articles of association, rules and regulations may be amended at any annual meeting by two-thirds vote of the members present; provided a written copy of such proposed changes shall have been presented at a previous meeting or submitted to the board at least thirty days before such meeting. Whenever any amendment is made in accordance with this section it shall affect every policy in force. A copy of which shall be recorded in the office of the recorder of DeKalb county, State of Indiana, subject to the Constitution and laws of this State."

Appellant was originally organized March 18, 1878. The above form of policy and rules and regulations appear

to have been adopted March 12, 1898, as shown by the following: "Be it resolved that the foregoing be adopted as the laws, rules and regulations of this association, hereby repealing all other laws and parts of laws in conflict herewith. Adopted March 12, 1898. R. S. S. Reed, president. W. F. C. Francis, secretary. [Seal.]"

The third paragraph of complaint is substantially the same as the second paragraph, except that it avers a gift of the real estate by appellee to Cyrus B. Jackman, with the reservation of a life estate, use and occupation of the premises; that the company made the readjustment of the insurance at its own instance, and for its own benefit and advantage; that appellee never made but one application to the company for insurance; that she has been a continuing member since the 3d day of April, 1880; that she never at any time had any notice of invalidity of her policy, or that it was rescinded by the company nor did the company ever repay to her any money on account of its assessments, but treated said policy as a binding and valid contract of indemnity and obligation on its part, and levied and received assessments up to the date of said loss. Appellant filed separate demurrers to each of said paragraphs of complaint, which were overruled, and exceptions properly taken. The appellant answered the appellee's complaint in three paragraphs. The first, a general denial. A demurrer was sustained to the second, and overruled as to the third, and exceptions properly taken. By the second paragraph of answer, appellant filed as a part thereof a copy of the certificate and policy issued, and avers "that by section twenty-eight of said articles of association it is provided that any policy issued on such application to any person or persons who do not own the title in fee simple to the real estate on which the building insured is situated shall be null and void, and the association shall not be responsible for any loss or damage thereto; that at the date of said application, and long prior thereto, the plaintiff had ceased to be the owner

in fee simple of the real estate on which the property was situated;" that on August 10, 1899, by warranty deed, appellee and her husband conveyed said real estate to one Cyrus Jackman, Jr. Wherefore the appellant prays judgment. Replies were filed to the third paragraph of answer, and, upon the issues thus joined, trial by jury was had; interrogatories submitted to jury and answered, verdict for appellee, motion for judgment notwithstanding the general verdict, motion for new trial overruled, and exceptions and judgment upon the verdict.

The answers of the jury to the interrogatories show that appellant issued to appellee a policy of insurance on April 3, 1880; that she was then the owner of the real estate on which the building covered by said policy stood; that on August 10, 1899, she conveyed the land to her grandson, and in writing reserved a life estate therein, and the exclusive use, possession and enjoyment of the land, including the dwelling-house thereon; that appellant on August 23, 1900, made a revaluation of the property, including the dwelling so insured; that one James Hodges, a director of appellant, and under instructions of appellant, at the home of appellee, made said revaluation, filled up the blank form of application for insurance, without instruction from appellee as to her title or mortgage indebtedness upon said land, and without reading the application to her, and by his direction appellee signed the application, under the belief that such application contained only statements as to the natural condition and age of the dwelling and other buildings on said real estate; that at the time of said revaluation, and for a long time thereafter, W. F. C. Francis was the secretary of appellant; that before the issuing of the policy sued on, and after said revaluation, appellee, at the office of appellant's secretary, informed said secretary as to the condition of her title and her interest in said real estate, and asked that the policy be issued so that it would be an indemnity against loss; that she was then informed by the secretary of appel-

lant that no change or assignment of said policy was necessary; that, as she had exclusive use and control of the building for her lifetime, she had a right to have the policy issued to her in her name, and said secretary, "soon after this visit of the plaintiff to him, countersigned, issued and delivered the policy sued on to the appellee;" that said secretary had full knowledge at the time of issuing said policy of the condition and character of plaintiff's title to said land; that appellee received said policy in good faith, believing it to be a valid contract of insurance, and appellant continued to make assessments on said policy up to the time the dwelling was destroyed by fire, to wit, March 22, 1902; that appellee paid all assessments made against her on said policy, which assessments were received and retained by appellant; that appellant at no time questioned the validity of said policy until after the destruction of said dwelling; that the dwelling was of the value of from $500 to $600, and was insured by appellant for $400, which insurance has never been paid; that appellee was in possession of said dwelling-house on April 3, 1880, and continuously thereafter up to its destruction by fire.

The first and second errors assigned in this court challenge the ruling of the lower court on the demurrer to each paragraph of the complaint; the third error assigned questions the court's ruling on the demurrer to the second paragraph of answer; the fourth and fifth errors assigned, appellant admits, present no question for our decision; the sixth, that the court erred in overruling the motion for a new trial; and seventh, "the court erred in overruling defendant's motion for judgment on the interrogatories addressed to the jury, and their answers thereto, notwithstanding the general verdict." The evidence is not in the record.

But one question is involved by the motion for a new trial, based upon the giving and refusing to give certain instructions. The instructions about which appellant makes complaint are long, and can serve no good purpose by being

copied in this opinion. The ones given are based upon the theory that sections twenty-eight and thirty-seven of the laws, rules and regulations of said appellant, and heretofore copied in this opinion as a part of the complaint, are a part of its by-laws, which said company, through its officers and authorized agents, may waive, provided the insured had an insurable interest in the property insured: Provided, further, that said policy so issued is treated by said company as a valid and subsisting policy after knowledge of the fact that the insured has less than a fee-simple interest in the property. While the instructions tendered by appellant and refused by the court are upon the theory that said sections twenty-eight and thirty-seven are articles of association which can not be waived by the agents and officers of appellant, and unless the insured has a fee-simple title to the property insured, the policy is void and appellee can not recover.

The first and controlling question in this case, as it seems to us, is, could the officers or agents of the appellant waive the provisions of sections twenty-eight and thirty-seven as to the character of the title held by the insured, and issue a valid and binding policy on property other than that held by the assured as a fee-simple owner?

1. Appellant's existence depends upon the rights and powers authorized and expressly given it by legislative enactments. It is a creature of the statute. The statutory provisions prescribing the mode in which an act shall be done is a provision proper for the articles of association, and forms a part of the contract between the insurer and the assured, which can not be waived, and any one becoming a member of such association is charged with knowledge, and is bound to know, of the corporate power of such association. *Leonard* v. *American Ins. Co.* (1884), 97 Ind. 299; *Gibson* v. *Megrew* (1900), 154 Ind. 273, 48 L. R. A. 362; *Behler* v. *German Mut. Fire Ins. Co.* (1879), 68 Ind. 347.

2. "Courts will compel adherence to the charter and to

the purposes for which the society was organized, but they will not do more." *Supreme Lodge, etc.,* v. *Knight* (1889), 117 Ind. 489, 3 L. R. A. 409.

This court, in the case of the *Indiana Bond Co.* v. *Ogle* (1899), 22 Ind. App. 593, 72 Am. St. 326, said: "It is fundamental that a corporation can be created, and can exist, by virtue of statutory authority, and by that only. If a corporation organizes under a general act, and inserts in its articles of association regulations and provisions additional to those required by the creative statute, such additional regulations and provisions are void. Nor is the corporation permitted to place any restrictions upon the manner of exercising its corporate duties other than the statute provides." Therefore, whatever provisions were placed in its articles of incorporation, not required by the statute authorizing its creation to be so stated therein, are void, and will not and should not be treated as a part of its articles of incorporation, but as by-laws, except where such statute authorizes such company to make rules and regulations for the purpose of facilitating and conducting its business in an orderly and efficient manner, prescribing the duties of its officers, etc. 1 Thompson, Corporations, §216.

3. Appellant was originally organized March 17, 1878, and under and by virtue of a legislative enactment of this State approved March 14, 1877. Acts 1877 (s. s.), p. 53. By one of its rules and regulations, adopted upon such original organization, it reserved the right to alter or amend its articles of association upon certain conditions.

By an act of the legislature of this State in force September 19, 1881 (Acts 1881, p. 714, §4932 Burns 1901, §3774 R. S. 1881), "any number of persons, not less than ten, may form an incorporated company for the purpose of mutual insurance of the property of its members against loss by fire or damage by lightning; which property to be insured shall embrace dwelling-houses * * * such property being

upon farms as farm property. The articles for forming such associations shall be signed by the persons who at first form such association, and be recorded in the office of the recorder of the county or counties where such association does business. Such associations shall be managed by such officers as their articles may provide for; and in the election of such officers each member of the association shall be entitled to one vote. Every such association may sue or be sued, by such name as shall be set forth in the articles of association, and shall have all the other powers of corporate bodies: Provided, that no company organized under this act shall do any business, or take any risks, or make any insurance in more than three counties; which counties shall be contiguous, and shall be set forth in its articles of association." On March 12, 1898, appellant amended its articles of association, rules and regulations, evidently intending to come within the provisions of the act of 1881. By the act of 1877 it was only enabled to insure against loss by fire, while the act of 1881 authorizes such associations to insure against loss or damage by lightning as well. By the very terms of the policy sued on, the indemnity is "against loss or damage from fire or lightning." Its preamble to what it terms its "rules and regulations" asserts its purpose of "insurance against loss by fire and lightning on personal property, dwelling-houses," etc., and its original articles providing for amendments "subject to the Constitution and laws of this State," all tend to support the conclusion that appellant was operating under the latter act at the time of the loss, and its provisions should control.

4. This statute designates the kind of property which appellant may insure, but it does not attempt to designate the character of title the insured shall have in any of such property. That is left to the corporation itself to determine. This it may do by rules or by-laws, of which its members must take notice. *Gray* v. *Supreme Lodge, etc.* (1889), 118

Ind. 293; *Pfister* v. *Gerwig* (1890), 122 Ind. 567; *Supreme Lodge, etc.,* v. *Knight, supra; Bauer* v. *Samson Lodge, etc.* (1885), 102 Ind. 262.

5.    Appellant, by what it terms "rules and regulations" relative to the character of title to property its members should have in order to procure insurance thereon, as well as providing a condition when such insurance would cease, adopted said sections twenty-eight and thirty-seven, which, in our opinion, are not part of its articles of association, and, be they "rules and regulations" or by-laws, they were the acts of the corporation, and being acts of the corporation, as long as appellee had an insurable interest in the property, such rules could be waived by the corporation, and the policy continue to cover that interest.

6.    Both paragraphs of the complaint aver knowledge on the part of the appellant of all the facts relative to appellee's title and interest in the land at the time of and before the issuing of the policy sued on; that appellant advised appellee that a life estate in the land was sufficient to validate the policy and keep it in full force and effect; that possessed of this knowledge appellant for nearly three years continued to levy, collect and retain assessments paid by appellee on account of the policy in suit. The paragraphs were sufficient to withstand a demurrer. *Gray* v. *National Benefit Assn.* (1887), 111 Ind. 531; *Northwestern, etc., Assn.* v. *Bodurtha* (1899), 23 Ind. App. 121, 77 Am. St. 414.

7.    The theory of appellee is that appellant waived its right to declare a forfeiture of the policy under section twenty-eight of its rules and regulations. In passing upon the question of waiver, the fact that appellant is a mutual company, and that appellee is a member thereof, can furnish no reason for not giving the contract the same force and effect to prevent a forfeiture as would be given a contract issued by a stock company. *Willcuts* v. *Northwestern, etc., Ins. Co.* (1882), 81 Ind. 300; Richards, Insurance, §76.

8.   Corporations act through their officers and agents. The statute under which this corporation is organized expressly provides that it shall be managed by such officers as its articles may provide for.   Appellant's secretary is one of its officers.   One of his duties is to countersign its contracts of insurance, "issue all policies and orders, and collect moneys due the company."   He shall also act as general solicitor, and also "keep all the necessary books and accounts of the association."   These are duties required of the secretary by appellant's rules and regulations.   As a proposition of law, it is well settled in this State "that notice to an agent is notice to the principal of any matter that is within the scope of the agency."   *Marion Mfg. Co.* v. *Harding* (1900), 155 Ind. 648; *Phoenix Mut. Life Ins. Co.* v. *Hinesley* (1881), 75 Ind. 1; *Port Huron Engine, etc., Co.* v. *Smith* (1898), 21 Ind. App. 233; *Supreme Court, etc.,* v. *Sullivan* (1901), 26 Ind. App. 60.

This court, in the case of *Union Cent. Life Ins. Co.* v. *Whetzel* (1902), 29 Ind. App. 658, in speaking of a policy containing a stipulation that, in default of the payment of premium notes before or at the time when they became due, the policy should be null and void without action on the part of the company, held that "The company, having accepted these overdue payments, can not now be heard to say that the agent granting the extensions had no authority to do so;" that "The stipulation in the policy that none of its terms could be modified or changed except in a specified manner could itself be waived by the company either expressly, or by the conduct of the company.   *   *   *   Although a policy may provide that an agent shall have no power to waive a forfeiture, yet the company may estop itself, by its conduct, from denying the granting of such powers to him."   Citing authorities.

In the case of *Marshall, etc., Ins. Co.* v. *Liggett* (1897), 16 Ind. App. 598, this court quotes with approval from *Insurance Co.* v. *Wolff* (1877), 95 U. S. 326, 24 L. Ed. 387,

as follows: "It is true, that, where an agent is charged with the collection of premiums upon policies, it will be presumed that he informs the company of any circumstances coming to his knowledge affecting its liability; and, if subsequently, the premiums are received by the company without objection, any forfeiture incurred will be presumed to be waived." And, further quoting from *McGurk* v. *Metropolitan Life Ins. Co.* (1888), 56 Conn. 528, 16 Atl. 263, 1 L. R. A. 563: "These cases, and many others that might be cited, fully establish the doctrine that knowledge affecting the rights of the insured, which comes to an agent of an insurance company while he is performing the duties of his agency in procuring applications for insurance and delivering policies and collecting premiums, becomes the knowledge of the company, and if the latter afterwards collects premiums of such parties it waives all objection with regard to the matters of which it has such knowledge."

In *Home Ins. Co.* v. *Gibson* (1894), 72 Miss. 58, 17 South. 13, it was held that where an agent of an insurance company receives the premium and issues a policy on a building, knowing that the assured has only a leasehold interest in the land on which the building insured stands, it is sufficient to waive the stipulation in the policy to the effect that it shall be void if the interest of the assured be other than the sole, unconditional ownership, and that no representative of the company is authorized to waive conditions except in writing indorsed on or attached to the policy. In speaking of this stipulation, the court said: "This clause is a species of refinement by which the corporation withdraws within its invisible and intangible ideality when liability is sought to be imposed upon it, bound by the acts of no agent, officer, or other representative, but reaches forth therefrom with Briarean hands to receive the profits and avails of these same acts performed by these same 'agents,' as against those with whom these same agents have dealt. The refinement is too subtle for the practical affairs of actual life, and we

repudiate it." *Trustees, etc.,* v. *Northwestern Nat. Ins. Co.* (1898), 98 Wis. 257, 73 N. W. 767, 67 Am. St. 805.

9. All provisions in a policy of insurance or in the by-laws of the company providing for forfeitures will be strictly construed against the company. *Schmidt* v. *German Mut. Ins. Co.* (1892), 4 Ind. App. 340; *Continental Ins. Co.* v. *Vanlue* (1891), 126 Ind. 410, 10 L. R. A. 843; *Insurance Co.* v. *Norton* (1877), 96 U. S. 234, 24 L. Ed. 689; *Phenix Ins. Co.* v. *Tomlinson* (1890), 125 Ind. 84, 9 L. R. A. 317, 21 Am. St. 203. Courts will prevent a forfeiture of an insurance contract when it is possible to do so without making a new contract for the parties. *Continental Ins. Co.* v. *Vanlue, supra,* and cases cited.

10. Slight acts or circumstances on the part of the insurer will be construed by the courts as a waiver to prevent a forfeiture, where the condition in the contract is in favor of the company. *National Masonic, etc., Assn.* v. *McBride* (1904), 162 Ind. 379; *Replogle* v. *American Ins. Co.* (1892), 132 Ind. 360; *Germania Fire Ins. Co.* v. *Pitcher* (1903), 160 Ind. 392; *Hartford Life Ins. Co.* v. *Unsell* (1892), 144 U. S. 439, 12 Sup. Ct. 671, 36 L. Ed. 496; *Insurance Co.* v. *Norton, supra; Germania Fire Ins. Co.* v. *Hick* (1888), 125 Ill. 361, 17 N. E. 792, 8 Am. St. 384; *Farmers Ins. Assn.* v. *Reavis* (1904), 163 Ind. 321; *Lamberton* v. *Connecticut Fire Ins. Co.* (1888), 39 Minn. 129, 39 N. W. 76, 1 L. R. A. 222; *Gray* v. *National Benefit Assn., supra; Carpenter* v. *Continental Ins. Co.* (1886), 61 Mich. 635, 28 N. W. 749; *Wood* v. *Supreme Ruling, etc.* (1904), 212 Ill. 532, 72 N. E. 783. A policy of insurance was held good where written consent was not given for additional insurance, although the policy contained a stipulation requiring such consent by the insurer to be in writing. The assured having given notice of such additional insurance, and the company having made no objection thereto within a reasonable time, its consent was presumed, and it was

estopped from insisting upon a forfeiture. *Hanna* v. *Greenwich Ins. Co.* (1894), 56 Mo. App. 582.

11. In the case at bar, as it seems to us, the answers to the interrogatories clearly show that appellant, at the time the policy in suit was issued, had full knowledge of appellee's title in the land, and that appellee received and retained said policy under the advice and assurance of appellant's secretary that it would be valid and binding on the company; that appellant thereafter continued to make assessments against appellee on account of such policy, which assessments appellee duly paid, and which payments were duly received and retained and are still retained by appellant, and are acts and facts, in our opinion, sufficient not only to show a waiver of section twenty-eight of the rules and regulations of appellant, but to estop appellant from denying liability after loss on account of such policy. To hold otherwise would be sanctioning an unconscionable advantage contrary to every well-considered legal precedent. *Sweetser* v. *Odd Fellows, etc., Assn.* (1889), 117 Ind. 97, and cases cited; *Bowlus* v. *Phenix Ins. Co.* (1892), 133 Ind. 106, 20 L. R. A. 400; *Commercial Union Assur. Co.* v. *State, ex rel.* (1888), 113 Ind. 331; *Germania Life Ins. Co.* v. *Lunkenheimer* (1891), 127 Ind. 536; *Traders Ins. Co.* v. *Cassell* (1900), 24 Ind. App. 238; *Union Cent. Life Ins. Co.* v. *Whetzel, supra; Stylow* v. *Wisconsin, etc., Life Ins. Co.* (1877), 69 Wis. 224, 34 N. W. 151, 2 Am. St. 738; *Insurance Co.* v. *Wilkinson* (1871), 13 Wall. 222, 20 L. Ed. 617; *Warnebold* v. *Grand Lodge, etc.* (1891), 83 Iowa 23, 48 N. W. 1069; 2 May, Insurance (4th ed.), §507; 1 Joyce, Insurance, §533.

12. There was no error in sustaining the demurrer to appellant's second paragraph of answer, as proof of all the facts therein alleged was admissible under the general denial.

13. The objection of appellant to the instructions given the jury is clearly presented by instruction number two,

which reads as follows: "Notwithstanding the fact, if it be a fact, shown by the evidence, that the defendant company, by its by-laws and rules provides that any policy of insurance issued upon any property to any person who does not own the same in fee simple shall be null and void, yet, if said company through its officers or authorized agents should issue a policy of insurance to a person who was not the owner in fee simple of the property insured, but who has an insurable interest in the same, with knowledge upon the part of said officer or agent that said person was not the owner in fee simple of the property, and said policy was treated by said company as a valid and subsisting policy, after knowledge of said fact, then and in such case the company would be deemed in law to have waived such rule or by-law, and to have elected to treat said policy as a binding contract on its part with the insured." In view of what we have heretofore said, this instruction fairly states the law, and is applicable to the case at bar.

14. The seventh error assigned by appellant is upon the ground of a fatal variance between the allegations of the complaint and the proof as shown by the answers of the jury to the interrogatories. It is true, plaintiff must recover, if at all, upon the allegation of her complaint, but such variance must be as to a material fact. The general verdict imports, to the exclusion of all inferences and presumptions, that every material averment of the complaint was established by the evidence. It therefore follows that this motion can only be sustained where the answers to the interrogatories are in irreconcilable conflict with the general verdict "in some vital particular between it and the facts found, or some of them, which can not be avoided or explained by any reasonable intendment or inference, and by which the general verdict is necessarily overthrown." *Princeton Coal, etc., Co.* v. *Roll* (1904), 162 Ind. 115; *Chicago, etc., R. Co.* v. *Leachman* (1903), 161 Ind. 512; *Shuck* v. *State, ex rel.* (1893), 136 Ind. 63; *Matchett* v. *Cincinnati, etc., R. Co.*

(1892), 132 Ind. 334; *Union Traction Co.* v. *Vandercook* (1904), 32 Ind. App. 621.

The fact that the complaint avers a readjustment of appellee's insurance at her home by appellant, taken in connection with all the other averments of the complaint—and on this subject the jury found that the readjustment or revaluation of the property and application for insurance was there made and taken by one James Hodges, a director of appellant, and to whom appellee made no statement with reference to her title in the land, in our opinion—is not such a fatal variance as will authorize this court to disturb the judgment of the court below.

Finding no error in the record, judgment affirmed.